STATE of Missouri, Plaintiff-Respondent,

v.

James William GOFORTH, Defendant-Appellant.

No. 35738.

Missouri Court of Appeals, St. Louis District, Division Two.

Feb. 24, 1976.

Motion for Rehearing or Transfer Denied April 13, 1976.

Brunson Hollingsworth, Hollingsworth & Williams, Robert M. Sears, Hillsboro, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Philip M. Koppe, Robert L. Presson, Asst. Attys. Gen., Jefferson City, Hugh Roberts, Pros. Atty., Farmington, Charles A. Weber, Pros. Atty., Ste. Genevieve, for plaintiff-respondent.

STEWART, Judge.

James William Goforth, defendant, was found guilty of murder in the second degree. The jury was unable to agree on punishment. The court sentenced defendant to thirty years imprisonment. We affirm.

Defendant complains of the trial court's failure to sustain defendant's motion for judgment of acquittal at the close of the State's case and also its failure to sustain the motion for acquittal at the close of defendant's case. Defendant argues that the State did not establish the corpus delicti and the criminal agency. The other issues urged by defendant are concerned with sentencing procedure.

■ Any claim of error with respect to the motion for judgment of acquittal at the close of the State's case was waived when defendant chose not to stand on his motion and offered evidence in his own behalf after the motion was denied. *State v. Turnbough,* 497 S.W.2d 856, 858[1] (Mo.App. 1973).

■ Defendant has preserved for our review the question of whether there was sufficient substantial evidence to warrant the submission of the case to a jury. In making this determination the facts in evidence and the favorable inferences reasonably drawn therefrom must be considered in the light most favorable to the State and all evidence and inferences to the contrary must be disregarded. We do not consider defendant's evidence except where it is favorable to the finding of the jury. *State v. Johnson,* 447 S.W.2d 285, 287[2] (Mo.1969).

Having these principles in mind the jury could have found that Ron Hulvey, Dale Bader and defendant were riding around Festus, Missouri, in Hulvey's black 1963 Cadillac on the afternoon of October 27, 1972. Since defendant had said that he had to see someone in Farmington, Missouri, the three drove to that city. After arriving in Farmington they stopped at a fast food stand where defendant sought information concerning three individuals. He received directions to the home of one of the persons about whom he had inquired, John Hunt. At that time defendant was carrying a pistol in his hip pocket. After leaving the food stand, the three stopped near the Canary Bar and defendant went inside alone. At that time defendant was carrying the gun in his belt on the left side. He went up to the bar and ordered a beer. Frank Somogyi, the bartender, asked to see defendant's identification. While Somogyi was examining defendant's cards Homer McClaskey, who was described as "always happy-go-lucky", approached Somogyi and told him that he should "check him good, I'm with the F.B.I.". He was not with the F.B.I. Somogyi told McClaskey to go sit down and he returned to his seat. There was no trouble between McClaskey and defendant inside the bar.

Defendant was served a beer and began drinking it. A few minutes after returning to his seat, McClaskey got up and left the bar. Defendant, who had not finished his beer, left a few seconds after McClaskey. McClaskey's car was parked across the street, at about a 45° angle from the tavern. He had gone about forty feet into the street in the direction of his car when he suddenly turned and came back to defendant who was standing just outside the door of the bar. The jury could have inferred that McClaskey's return was in response to a request on the part of the defendant. They stood 1½ to 2 feet apart. After "just talking" for a little more than a minute, during which time neither man touched the other, defendant shot McClaskey. No one had heard the conversation. McClaskey died a short time later as a result of the gun shot wound.

After the shooting defendant ran to Hulvey's car, pointed a gun at Hulvey, who was driving, and told him to get out of there. He also told Hulvey and Bader that if they

testified against him he would "get" them. Before the car was stopped by the police, defendant threw the pistol out the window of the moving vehicle.

■ Murder in the second degree is the willful, premeditated killing of a human being with malice aforethought but without deliberation. § 559.020.[1] The requisite malice may be presumed from an intentional killing. "And, an assault with a deadly weapon used in such a way as will naturally, probably or reasonably produce death or jeopardize life, gives rise to the presumption of intent to kill." *State v. Sherrill,* 496 S.W.2d 321, 324 (Mo.App.1973). Evidence of acts, conduct, and declarations of the accused, including flight and attempts to conceal the crime, while not sufficient in themselves, are considerations tending to show a consciousness of guilt, and may be considered by the triers of the facts. *State v. Simmons,* 494 S.W.2d 302 (Mo.1973).

■ This case does not present a situation where the evidence "tells only one story" indicating the innocence of the accused. *State v. Rash,* 359 Mo. 215, 221 S.W.2d 124, 126 (1949). There was conflicting testimony as to whether McClaskey gave Goforth cause to fear injury or death. Defendant did testify that he was being choked by the deceased. Some of the witnesses called on behalf of the State testified that the two were "kind a fighting" outside the bar, others said they were not. The State vouches for the credibility of its witnesses and is bound by uncontradicted evidence it introduces even if adverse. However, it is not precluded from producing evidence in contradiction of adverse evidence which comes into its case. *State v. Key,* 411 S.W.2d 100 (Mo.1967). We do not undertake to decide which of the two versions of the encounter between the defendant and the deceased is of greater probative force. That determination is within the province of the jury. We hold that in these circumstances viewing the evidence in the light most favorable to the State there was substantial evidence to warrant the jury in finding the defendant guilty of second degree murder.

Defendant's next three contentions involve the sentencing procedure. He argues that he was not provided with the statutory safeguards of § 556.280; that he had a right to a presentence investigation; and that he was sentenced on the basis of undisclosed information. The factual setting for these contentions follows.

At the commencement of the trial the prosecuting attorney offered an amended information charging defendant as a second offender. Defendant's objection to the amended information was sustained and thus no hearing was held with respect to any prior felony as required by § 556.280.

The jury returned a verdict of guilty of second degree murder but were unable to agree upon the punishment, as a result the trial court assessed punishment.

Considering that he might be called upon to sentence defendant the judge spoke with George Shaw, District Supervisor of the Missouri Probation and Parole Service and Tom Eck, a probation officer. Mr. Eck had worked on another case involving defendant and was familiar with his background. When Mr. Eck entertained some uncertainty during the discussion, he called his office in order to obtain accurate information from his files. The court received a recommendation from Mr. Eck and also a recommendation from Mr. Shaw. Before the jury returned the court had tentatively arrived at a sentence. After the jury returned the verdict of guilty and announced that they were unable to assess the punishment the jury was discharged. The court then had a brief discussion with the foreman of the jury in which he has asked the range of punishment which had been discussed and was informed that it was from ten years to fifty years. Neither the State nor defendant were represented at these discussions. The judge, based upon these discussions, his own independent judgment of the facts in the case, and his knowledge of the back-

---

1. All Statutory references are to RSMo 1969 unless otherwise indicated.

ground of the defendant, independently determined upon the sentence of thirty years.

On the date that the jury returned the verdict the court purported to enter judgment and sentence. He also granted defendant 30 days additional time in which to file a motion for new trial. The purported judgment was a nullity. Its effect was merely an announcement of the punishment which the court intended to pass. *State v. Grant,* 380 S.W.2d 799 (Mo.1964). The trial court thereafter properly set aside the purported sentence and judgment, heard and overruled the motion for new trial, granted defendant allocution and sentenced him in accordance with his previously announced intention.

Defendant argues that the trial court should not have assessed the punishment because it was aware of the amended information charging defendant as an habitual criminal. As defendant put it, the "sequence of events affected Defendant as though he had been prosecuted as an habitual offender. The State began Defendant's day in Court by emphasizing to the Court that the State believed Defendant was an habitual offender. But the fact that he was an habitual criminal was never proved and no evidence of his habitual criminality was tendered."

■ Defendant's argument overlooks the fact that there was proof of defendant's prior criminal activity. In fact it was put into the case by defendant. In defendant's opening statement the court and the jury were advised that defendant "was on parole for having been convicted of a marijuana offense." Defendant took the stand and testified in his own behalf and advised the court that he was on parole. On cross-examination he testified that he had been convicted of possession and of growing marijuana and of attempting to steal under $50.00. Defendant's previous "troubles with the law" were mentioned in his closing argument on four separate occasions. Under the circumstances we can see no prejudice in the proffered amended information charging defendant as a second offender. The court sustained defendant's objection

to that pleading and defendant had the opportunity to have the jury assess his punishment. When the jury was unable to agree upon the punishment that duty devolved upon the court. Rule 27.03. In such circumstances the court should take into consideration not only the nature and circumstances of the offense but also the character and propensities of the offender as well as his past. *State v. Cline,* 452 S.W.2d 190 (Mo.1970). Among the matters in one's past which the court should consider is the existence of a prior criminal record. *State v. Armstrong,* 433 S.W.2d 270, 272[5] (Mo. 1968). We find no merit in defendant's contention.

■ Defendant next contends that he has a right to a presentence investigation. After the verdict was rendered by the jury the defendant requested a presentence report which the trial court denied. This same contention has previously been ruled by our courts and requires no further discussion. The presentence report under Rule 27.07 is not a matter of right but is discretionary with the court. *Griffith v. State,* 504 S.W.2d 324 (Mo.App.1974); *State v. Tettamble,* 517 S.W.2d 732 (Mo.App. 1974). It has been held that the failure to consider a presentence report does not violate a defendant's right to the due process of law. *Cassidy v. United States,* 304 F.Supp. 864, 868 (E.D.Mo.1969). Affirmed 428 F.2d 585 (8th Cir. 1970).

Defendant's brief contains the following point: "The Court violated defendant's right to the due process of law by sentencing him on the basis of undisclosed information."

■ To preserve constitutional issues for review they must be raised at the first opportunity consistent with orderly procedure; the trial court should be advised as to the specific article and section of that constitution claimed to have been violated, and, if possible, the point must be presented in the motion for new trial, if any. The point must also be adequately covered in the briefs which means that the constitution sought to be invoked and the specific article

and section must be designated and the facts constituting the violation must be set out. *State v. Griffin,* 339 S.W.2d 803 (Mo. 1960).

In this case a hearing on the motion for new trial was had on September 13, 1973. At that time the court advised the parties that he had spoken to the foreman of the jury after the jury had been discharged. The substance of that conversation was set out in a letter which the court had sent to counsel on June 1, 1973. The court then told the parties of his conversation with the probation officers mentioned earlier in this opinion. Defendant made no objection, did not ask leave to amend the motion for new trial and did not make a request for any information which the court may have taken into consideration in the sentencing process. It was not until September 15, that the court formally sentenced defendant. The court on that day asked defendant's counsel if he had anything to add to his argument on the motion for new trial. Counsel advised that he had nothing to add and did not attempt to raise the issue which he seeks to bring to us on appeal.

 Upon being granted allocution defendant's counsel stated that he objected to sentencing because the court was without jurisdiction to sentence defendant. No specific reason was given. Granting allocution affords the defendant an opportunity to raise any infirmities in the sentencing procedure.

Defendant was given the opportunity to raise the issue which he now attempts to raise but did not do so at the first opportune moment. The matter is not before us for review.

Defendant also questions the constitutionality of § 549.245 and Rule 27.07 [2] for the first time on appeal. This appeal was originally filed in the Supreme Court. That court returned the notice of appeal because of lack of jurisdiction. These issues were not raised in the trial court and are not preserved for our review. *State v. Harms,* 507 S.W.2d 29, 31 (Mo.App.1974).

Our review, under Rule 28.02 V.A.M.R. reveals that the information is sufficient; the verdict is responsive to the charge; the punishment is within statutory limits; allocution was accorded, and the judgment is in proper form.

Judgment affirmed.

CLEMENS, P. J., and KELLY, J., concur.

---

**2.** For an interesting discussion of the problem see "The Use of Presentence Reports: Constitutional Consideration," Malcolm J. Harkins,

*The Symposium,* St. Louis University Law School, Vol. 3 No. 2 (1975), p. 7.