STATE of Missouri, Respondent,

v.

Jewell WILLIAMSON, Appellant.

No. 46108.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 19, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 1, 1983.

Murry A. Marks, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for respondent.

CRIST, Judge.

Defendant appeals from a jury verdict convicting him of second degree murder, § 565.004, RSMo.1978. The trial court sentenced defendant in accord with the jury's recommendation to 30 years imprisonment. We affirm.

In reviewing defendant's claim of insufficient evidence to support his conviction of second degree murder, we look to the evidence in favor of the jury's verdict and disregard defendant's evidence except to the extent it supports the jury's finding. *State v. Baldwin,* 571 S.W.2d 236, 239 (Mo. banc 1978). The state establishes second degree murder by proving beyond a reasonable doubt the killing was unlawful, premeditated, with malice aforethought but without deliberation. Section 565.004; see, *State v. McGowan,* 621 S.W.2d 557, 559 (Mo.App.1981).

Malice may constitutionally be presumed from a killing accomplished by use of a deadly weapon upon a vital part of the body. *Thompson v. State,* 576 S.W.2d 541, 547 (Mo.App.1978). Premeditation need exist but for a moment only. *State v. Williams,* 545 S.W.2d 342, 344 (Mo.App. 1976). An assault where a deadly weapon is used in such a way as will naturally, probably or reasonably produce death or jeopardize life gives rise to a presumption of an intent to kill. *State v. Goforth,* 535 S.W.2d 464, 466 (Mo.App.1976). Evidence of defendant's flight or attempts to conceal the crime may be considered by the jury as evidence tending to show a consciousness of guilt. *Id.*

On the evening of January 17, 1981, James Treacy, the victim, and Raymond Franklyn were passengers in a car driven by Steve Eckenrod. Franklyn sat on the right side of the rear seat, immediately behind the victim seated on the front passenger's seat.

As the three traveled north on Lucas and Hunt Road, a car exited Interstate 70 at a high rate of speed, failed to yield, and nearly collided with the Eckenrod vehicle. Eckenrod swerved and missed the car, driven by defendant. Defendant's car then pulled parallel with Eckenrod's car, approaching on the passenger side. Victim noticed defendant's window rolled down and defendant reportedly asked, "Do you have a problem, boy?" Victim responded, "Yes, nigger, I'll shove this fucking beer bottle up your ass, nigger." Franklyn testified he observed defendant look straight, then turn to his left to look at victim, point a revolver and fire. Defendant appeared to Franklyn to have his teeth gritted and to be angry.

Eckenrod testified the victim did not move his arms or hands or make any menacing gesture toward defendant prior to being shot. Eckenrod observed defendant reach over in his car and produce a pistol, give a mean look, fix his eyes on victim's chest, take aim and fire. The bullet entered victim's right chest at a 45 degree angle and caused his death a short time later.

After firing the shot, defendant sped away without stopping. St. Louis County Police traced the license number of the car to defendant and arrived at his apartment the next day. Defendant initially denied being near the scene of the incident and claimed there were no weapons of any sort in his apartment. After obtaining defendant's consent to search the apartment, the police found a snub-nose .22 caliber revolver hidden behind the foam covering one of defendant's stereo speakers. Ballistic tests confirmed the gun as the murder weapon. At a tape recorded interview conducted at the police station, defendant admitted he had pulled the trigger and shot at the Eckenrod car.

Defendant testified at trial he grabbed the revolver off the car seat in self-defense and the gun discharged "accidentally." We find the evidence sufficient to support the

jury's finding that defendant willfully, with premeditation and malice aforethought shot and killed the victim. Further, the jury was entitled to disbelieve defendant's version of the incident and find the killing was not justifiable homicide.

■ Defendant asserts he was entitled to an instruction on excusable homicide by accident, MAI–CR2d 2.28. Not only did defendant not request this instruction at trial, he did not raise this issue in his motion for a new trial, contrary to Rule 29.11(d), and he did not set forth in full in the argument portion of his brief the instruction in question. Rule 30.06(e). Nothing was preserved for review. *State v. Merritt,* 540 S.W.2d 183, 185 (Mo.App.1976).

Nevertheless, defendant urges us to review the trial court's failure to instruct on excusable homicide as plain error. Rule 29.12(b). We find no manifest injustice or miscarriage of justice.

■ If there is any evidence to support the special negative defense of excusable homicide the trial court must give such an instruction whether requested or not. MAI–CR2d 2.28 Note on Use 2; *State v. Sanders,* 541 S.W.2d 530 (Mo. banc 1976); *State v. Randolph,* 496 S.W.2d 257 (Mo. banc 1973). As Note on Use 1 to MAI–CR2d 2.28 indicates, the law contained in the instruction is a part of Missouri's common law and was unaffected by the repeal of the excusable homicide statute, § 559.-050, RSMo.1969.

■ Paragraph 2 of MAI–CR2d 2.28 sets forth four grounds upon which a homicide may be found excusable. Defendant contends the third alternative should have been submitted to the jury. That alternative allows the jury to acquit a defendant if it finds the death the result of accident or misfortune "in the heat of passion, upon sudden provocation, without any undue advantage being taken, *and without any dangerous weapon being used,* and not done in a cruel and unusual manner." (Emphasis added). This alternative "recognizes the all-too-human proclivity to engage in physical combat upon provocation and makes a death resulting therefrom excusable so long as the combat is not conducted in an unduly

dangerous way." *State v. Zweifel,* 615 S.W.2d 470, 473 (Mo.App.1981).

We first note the present case does not involve "scuffling over the gun." See *State v. Randolph, supra.* Rather, by defendant's own admissions, he unilaterally produced a dangerous weapon, a .22 caliber snub-nosed revolver, upon victim's verbal provocation. The facts of this case do not warrant submission of an excusable homicide instruction. Victim and defendant were at no time engaged in physical combat. Defendant clearly did not meet the requirements of alternatives three or four of the excusable homicide instruction on account of his use of a dangerous weapon. Further, the flourishing of the dangerous weapon removes alternative two from consideration because the death was not caused by a lawful act accomplished by lawful means. *See, State v. Merritt, supra.* Alternative one is patently inapplicable since defendant was not engaged in lawfully correcting a child, apprentice or servant. Since the record contains no evidentiary support for the submission of the excusable homicide instruction, no error occurred as the result of the trial court's failure to so instruct.

Affirmed.

CRANDALL, P.J., and REINHARD, J., concur.