**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Alvin O. LIGGINS,
Defendant-Appellant.**

No. 51038.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 20, 1987.

Motion for Rehearing and/or Transfer
Denied Feb. 24, 1987.

**76**

Anne-Marie Clarke, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction of second degree murder and sentence of fifty years imprisonment.

The victim, Thomas Davis, arrived at the emergency room of Homer G. Phillips Hospital in St. Louis at 3:56 a.m. September 8, 1984. He had a shotgun wound in his chest and abdomen. He apparently drove himself to the hospital. Prior to 3:30 or 3:45 a.m. on that date he had been engaged in a large stake poker game with defendant and William Yates at defendant's home. Some argument had occurred between defendant and Davis as a result of defendant's accusation that Davis was cheating. All three men had known each other for some period of time and played poker on numerous occasions previously. There was evidence that defendant was the loser in the game. Between 3:30 and 3:45 a.m. when Yates left defendant's home after the game, Davis and defendant were standing outside defendant's residence. Davis died of complications from the shotgun wound on October 12, 1984.

While in Homer G. Phillips hospital prior to transfer to Jewish Hospital, Davis made a statement to a police officer that "Al" had shot him. The officer described Davis at that time as calm and nonchalant. This testimony was subsequently ordered stricken by the trial court and the jury was instructed to disregard it. No other relief was requested. While Davis was still at Phillips, his ex-wife, in whose home he was temporarily residing, and her sister came to the hospital. When the ex-wife approached Davis he became "emotional", "frightened", "nearly hysterical". He stated to her, within hearing of the sister, "Ba,ba, I'm going to die, Ba." "Ba" was Davis' nickname for his ex-wife. He then stated, "Tell Frank Al shot me." Frank Coleman was Yates' brother, Davis' best friend, and acquainted with defendant. Coleman had come by defendant's house during the poker game and remained for a short period of time.

At the conclusion of the state's case the trial court sustained a motion for directed verdict on the charge of capital murder, but denied such motion as to lesser charged crimes.

■ In his first point on appeal defendant premises error upon the trial court's failure to suppress the testimony of the police officer, the ex-wife, and the sister concerning Davis' statements implicating "Al". The testimony of all three is challenged as hearsay. It is, of course. But as to the ex-wife and sister, it is admissible under the dying declaration exception to that rule. That exception requires that the utterance be made while the declarant believes death is imminent and has abandoned all hope of recovery. *State v. Mahone*, 699 S.W.2d 60 (Mo.App.1985) [1–5]. It is the impression of almost immediate death rather than the rapid succession of death which renders the statement admissible. *State v. Carr*, 610 S.W.2d 296 (Mo.App.1980) [5]. The best method of proving the state of mind of declarant, and one frequently not available, is his express statement concerning that state of mind. *Id.* It would be difficult to find a stronger case for application of the exception. Defendant, in an emotional, nearly hysterical state expressed his belief in his imminent death to a person with whom he had a close personal relationship. He was at the time suffering from a shotgun wound to a vital part of his body so his apprehension was not unreasonable. There was no error in admitting the testimony of the ex-wife and sister.

■ The police officer's testimony did not meet the required standard as it demonstrated no belief of impending death. But the testimony was stricken and no further relief was requested. Additionally,

the officer's testimony was clearly cumulative to that of the ex-wife and sister and no prejudicial error arose therefrom. *State v. Carr, supra,* [7].

 By two points defendant challenges the sufficiency of the evidence to support the conviction of second degree murder. That crime is established by proof that the killing was done by defendant and was unlawful, premeditated, with malice aforethought but without deliberation. *State v. Williamson,* 657 S.W.2d 311 (Mo. App.1983) [1, 2]. Malice may be presumed from a killing accomplished by use of a deadly weapon upon a vital part of the body. *Id.* An assault with a deadly weapon in such a way as will probably or reasonably produce death gives rise to a presumption of intent to kill. *State v. Goforth,* 535 S.W.2d 464 (Mo.App.1976) [3, 4].

 Defendant was in the company of Yates and the victim fifteen minutes prior to the victim's arrival at the emergency room. When Yates left defendant and victim, Davis was in good health and not wounded. When he arrived at Phillips' he had a shotgun wound to his chest and abdomen, vital parts of his body. Davis identified "Al" as his attacker and the defendant's nickname was Al. Shortly before Yates departed, defendant had accused Davis of cheating in the poker game. The evidence was sufficient to support the verdict.

Defendant next contends the trial court did not sufficiently advise the jury of the change in the charge from capital murder to second degree murder. This is claimed to have been particularly prejudicial because of extensive voir dire of the veniremen on capital murder. The record does not contain the voir dire examination so we cannot pass on that contention of prejudice. It was further agreed at the instruction conference that neither the court nor either counsel would discuss the dismissal of the capital murder charge. Defendant now challenges what he agreed to. Additionally the jury was properly instructed on the charge of second degree murder. We find neither error nor prejudice.

 Defendant finally contends that the court erred in accepting the verdict and punishment assessed by the jury as it was beyond the range permitted by statute. We agree that the punishment was beyond that authorized by statute. Section 565.021 RSMo Cum.Supp.1984, which became effective October 1, 1984, provides that second degree murder is a Class A felony. Section 558.011 RSMo Cum.Supp.1984, establishes the punishment for a Class A felony as a term of years not less than ten years and not to exceed thirty years, or life imprisonment. We reject the contention of the state that fifty years is less than life imprisonment and therefore within the range of punishment provided by the statute. To accept that proposition would be to excise from the statute the thirty year limitation. If a term of years is assessed, it may not exceed thirty years.

 The state contends that the proper punishment statute is Sec. 565.008.2 RSMo 1978 which was effective through September 30, 1984. That statute provides for imprisonment for a term not less than ten years but provides no maximum term. There are two difficulties with that argument. While the assault here took place prior to September 30, 1984, the death did not. The crime of second degree murder was not completed until Davis died on October 12, 1984. In addition, Sec. 1.160 RSMo 1978, provides that if the penalty for any offense is reduced after the crime is committed and before assessment of penalty the punishment provided by the amendatory law applies. The punishment assessed is in excess of that provided by statute. Where the punishment assessed by the jury exceeds the maximum prescribed by law the trial court shall pronounce a sentence within the statutory limits. Rule 29.04. We remand to the trial court with directions to set aside the sentence imposed and to impose a sentence within the statutory limits.

Judgment of conviction affirmed, cause remanded for resentencing.

DOWD and REINHARD, JJ., concur.