STATE of Missouri, Respondent,

v.

James Robert HAYES, Sr., Appellant.

No. WD 59964.

Missouri Court of Appeals,
Western District.

Aug. 27, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 1, 2002.

Application for Transfer Denied
Nov. 26, 2002.

Theodore M. Kranitz, St. Joseph, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Philip M. Koppe, Assistant Attorney General, Kansas City, MO, for respondent.

Before LISA WHITE HARDWICK, Presiding Judge, JOSEPH M. ELLIS, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Appellant James Robert Hayes, Sr., appeals from his conviction of one count of involuntary manslaughter, § 565.024.1,[1] and one count of armed criminal action, § 571.015.1. Appellant was sentenced to consecutive terms of two years imprison-

---

**1.** All statutory references are to RSMo 1994 unless otherwise noted.

ment on the involuntary manslaughter count and four years on the armed criminal action count. The evidence viewed in the light most favorable to the verdict reflects the following.

In June 1997, Appellant was living with his wife at 1919 Beattie in St. Joseph, Missouri. Tony Coone was a neighbor of Appellant and was living with his fiancé, Georette Hoyt, at 1912 Beattie. Appellant and Mr. Coone had previously had a series of problems, disagreements, and confrontations.[2]

In April 1997, Appellant and Mr. Coone got into an argument on Mr. Coone's property. During the course of that encounter, Appellant said he was going to "blow away" Mr. Coone. Mr. Coone responded, "You better pull the trigger the first time."

On the afternoon of June 3, 1997, Mr. Coone was in the street in front of his house rotating the tires on his Chevy Blazer. Appellant's pickup truck was parked across the street. At about 12:20 p.m., while Mr. Coone was rotating his tires, Appellant got into his truck and started to drive down the street toward Mr. Coone. As Appellant approached Mr. Coone, he swerved toward where Mr. Coone was lying in the street and almost ran over his legs. Mr. Coone stood up and started to verbally confront Appellant. Appellant stopped the truck and turned off the engine. Mr. Coone walked up to the pickup truck and slapped Appellant through the driver's side window with his open hand.

After Mr. Coone slapped Appellant, Appellant pulled out a pistol and fired. The bullet struck Mr. Coone in the neck, and he fell to the ground. The bullet passed through Mr. Coone's neck, injuring the spinal cord and causing paralysis. On

June 19, 1997, Mr. Coone died as a result of the gunshot wound.

Subsequently, Appellant was charged in the Circuit Court of Buchanan County with murder in the second degree, armed criminal action by reason of murder in the second degree, voluntary manslaughter, armed criminal action by reason of voluntary manslaughter, and involuntary manslaughter. At the commencement of trial, the State dismissed the counts of voluntary manslaughter, armed criminal action by reason of voluntary manslaughter, and involuntary manslaughter, but asked the trial court to permit it to reserve instructions on those counts if applicable at the close of evidence. Following jury trial, Appellant was found guilty of involuntary manslaughter and armed criminal action. He was sentenced to consecutive terms of seven years imprisonment.

Appellant appealed his convictions. On June 13, 2000, this Court reversed Appellant's convictions and remanded the cause for a new trial for involuntary manslaughter because the trial court had plainly erred in failing to include self-defense language in the instruction for involuntary manslaughter. *State v. Hayes*, 23 S.W.3d 783, 792 (Mo.App. W.D.2000).

Appellant was tried again, and on March 15, 2001, he was found guilty of involuntary manslaughter and armed criminal action. On May 3, 2001, he was sentenced to consecutive terms of two years imprisonment for involuntary manslaughter and four years for armed criminal action. Appellant brings eight points on appeal from that judgment.

In his first point, Appellant claims the trial court erred in overruling his motion

---

2. On various occasions, Mr. Coone had "cut donuts" in Appellant's yard, given Appellant's wife "the finger," and thrown ice water at Appellant. Also, on at least one occasion, Appellant reported Mr. Coone to the Health Department for stacking trash bags along the side of the street.

to quash the proceedings. Appellant contends that his motion should have been granted because there was no charging instrument to support a trial for involuntary manslaughter or armed criminal action in connection with involuntary manslaughter. In his fourth point, Appellant claims that, even if a charging instrument existed warranting a trial for involuntary manslaughter, he was never charged by indictment or information with armed criminal action in connection with involuntary manslaughter and that his armed criminal action conviction should, therefore, be reversed.

■ "Due process requires that a defendant may not be convicted of an offense not charged in the information or indictment." *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999). "The test for the sufficiency of an indictment is whether it contains all essential elements of the offense set out in the statute and clearly apprises defendant of the facts constituting the offense." *State v. Gheen*, 41 S.W.3d 598, 602 (Mo.App. W.D.2001).

■ "Rule 23.11 provides, in pertinent part, that no information shall be invalid because of any defect therein which does not prejudice the substantial rights of the defendant." *State v. Patino*, 12 S.W.3d 733, 738 (Mo.App. S.D.1999). "A court should reverse a conviction based upon a defective indictment only in instances where the indictment is so defective that by no reasonable construction can it be read to charge the defendant with the offense for which he was convicted." *Gheen*, 41 S.W.3d at 602.

■ Appellant was originally charged by information with second degree murder and armed criminal action in connection with that offense.[3] In his first trial, Appellant was found guilty of involuntary manslaughter, a lesser-included offense of second degree murder, and armed criminal action in connection with that offense. Because the trial court in the first trial failed to include self-defense language in the instruction for involuntary manslaughter, this court reversed the judgment and remanded the cause for a new trial. *Hayes*, 23 S.W.3d at 793.

■ Appellant did not challenge the sufficiency of the charging documents in his first trial or on appeal therefrom, and those documents were clearly sufficient to have supported his convictions on both involuntary manslaughter and armed criminal action. A defendant may be convicted of any lesser offense necessarily included in an indictment or information. *Hibler*, 5 S.W.3d at 150. Accordingly, since involuntary manslaughter is a lesser included offense of second degree murder, *State v. Smith*, 737 S.W.2d 731, 734 (Mo.App. W.D. 1987), the information charging Appellant with second degree murder was sufficient to support trying him for involuntary manslaughter.

■ Likewise, the original information charging Appellant with armed criminal action in connection with the murder in the second degree charge was sufficient to support Appellant's conviction of armed criminal action in connection with the lesser-included offense of involuntary manslaughter. "This court has specifically held that a defendant charged with Armed Criminal Action in the commission of a felony may be convicted of Armed Criminal Action in the commission of a lesser included felony." *Id.*; See also *State v. Adams*, 741 S.W.2d 781, 786 (Mo.App.

---

3. For some reason, the prosecutor also charged Appellant by information with the various lesser-included offenses of second degree murder. Those unnecessary counts were dismissed prior to the first trial.

E.D.1987); *State v. Taylor*, 724 S.W.2d 531, 536 (Mo.App. W.D.1986).

■ Now, on appeal from his convictions following retrial, Appellant contends that, because he was acquitted of murder in the second degree and armed criminal action in connection with murder in the second degree in his first trial and could not be retried on those charges on remand, the previous informations were no longer effective and were not sufficient to support his trial for involuntary manslaughter and armed criminal action in connection with involuntary manslaughter. Appellant cites to no authority for this proposition.

On appeal from the first trial, Appellant argued that remand for retrial would be improper because he had not been charged with involuntary manslaughter. In addressing that argument, this court specifically held that he could be properly retried on lesser-included offenses to those charged in the original information. *Hayes*, 23 S.W.3d at 792–93.

■ Moreover, "the 'primary purpose of an information is to give defendant sufficient notice of the charge to allow adequate preparation of a defense and avoid retrial on the same charges in case of acquittal.'" *Patino*, 12 S.W.3d at 738 (quoting *Taylor*, 929 S.W.2d at 218). Where an indictment or information is sufficient to support a defendant's original trial and conviction of a lesser-included offense, this court's remand for retrial on the defendant's conviction of the lesser-included offense does not render the original charging document or documents any less sufficient. In such a case, no substantial right of the defendant is prejudiced. The defendant is clearly on notice of the charges against him,[4] and the nature of the charges are sufficiently set forth in the applicable legal documents to avoid retrial on the same charges. Points denied.

■ In Point II, Appellant contends the trial court erred in refusing to set aside the verdict and enter a judgment of acquittal because the verdict was not supported by substantial evidence. Appellant argues that "all of the uncontroverted evidence established that [Appellant] was under attack from the decedent, was in reasonable fear for his own life, and acted in his own defense."

■ When considering the sufficiency of the evidence to support a criminal conviction, "[t]his Court must determine whether the state introduced evidence sufficient to allow a reasonable trier of fact to find each element of the charged offense beyond a reasonable doubt." *State v. Dowdy*, 60 S.W.3d 639, 641–42 (Mo.App. W.D.2001). Appellant does not contend that the evidence was insufficient to support the necessary elements of the crime of involuntary manslaughter.[5] Instead, Appellant asserts

---

**4.** "Every information or indictment puts the defendant on notice, for due process purposes, of all offenses included in the offense charged.'" *State v. Kohser*, 46 S.W.3d 108, 113 (Mo.App. S.D.2001) (quoting *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999)). Thus, a defendant is deemed to have notice that he could be convicted of any lesser-included offense of a charged crime. *Id.*

**5.** "Section 565.024.1(1) provides that a person commits the offense of involuntary manslaughter if he '[r]ecklessly causes the death of another person.'" *State v. Fox*, 916 S.W.2d 356, 359 (Mo.App. E.D.1996). "'[A] person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.'" *Id.* (quoting *MAI–CR 3d 313.10*).

Appellant concedes that he shot the decedent and that the decedent died as a result of the gunshot wound. At trial, Appellant testified that he fired his pistol in the direction of

that the "uncontroverted" evidence established that he was in reasonable fear for his life and that he was acting in his own defense in shooting the decedent. He, therefore, contends that the trial court should have set aside the jury's verdict and entered a judgment of acquittal because self-defense was clearly established by the evidence and any decision to the contrary was not supported by sufficient evidence.

 In Missouri, the right to self-defense is codified in § 563.031. *State v. Edwards*, 60 S.W.3d 602, 612 (Mo.App. W.D.2001). In order to be entitled to use deadly force in self-defense, four elements must be present:

(1) an absence of provocation or aggression on the part of the defender; (2) a reasonable belief that deadly force is necessary to protect himself or herself against an immediate danger of death, serious physical injury, rape, sodomy, or kidnapping or serious physical injury through robbery, burglary or arson; (3) a reasonable cause for that belief; and (4) an attempt by the defender to do all within his or her power consistent with his or her own personal safety to avoid the danger and the need to take a life.

*Id.* "Once the defendant has injected the issue of self-defense into the case, the burden shifts to the state to prove the absence of self-defense beyond a reasonable doubt." *State v. Allison*, 845 S.W.2d 642, 645 (Mo.App. W.D.1992). In the case at bar, the jury determined that the State met its burden and that the evidence established beyond a reasonable doubt that Appellant did not act in valid self-defense.

 In reviewing the sufficiency of the evidence to support the verdict, "[w]e accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary." *State v. McIntyre*, 63 S.W.3d 312, 315 (Mo.App. W.D.2001). Our review is limited to determining whether sufficient evidence was contained in the record from which the jury could have found Appellant guilty beyond a reasonable doubt. *Allison*, 845 S.W.2d at 645.

 "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense." *State v. Dulaney*, 989 S.W.2d 648, 651 (Mo.App. W.D.1999). "Where there is conflicting evidence or when different inferences can reasonably be drawn from the evidence, it is a question of fact for the jury whether the defendant acted in self-defense." *Allison*, 845 S.W.2d at 645.

Testimony was presented at trial indicating that Appellant initiated the incident by swerving his truck toward the decedent and that he came so close that he almost ran over his legs. Appellant then stopped his vehicle to allow a confrontation with the decedent to occur. Other testimony indicated that Appellant had a history of problems with the decedent and that he had previously threatened the decedent. This testimony was certainly sufficient to support a finding by the jury that Appellant provoked the altercation and/or acted

---

the decedent without looking and that he was not concerned with whether he shot him or not. "[T]he statutory definition of 'reckless' includes 'the conscious discharging of a firearm with disregard for a substantial and unjustifiable risk that death will result and that the conscious firing of the weapon constitutes

a gross deviation from what a reasonable person would do to protect himself.' " *State v. Hayes*, 23 S.W.3d 783, 790 (Mo.App. W.D. 2000) (quoting *State v. Beeler*, 12 S.W.3d 294, 297 (Mo. banc 2000)). Therefore, Appellant's own testimony sufficiently establishes the requisite elements of involuntary manslaughter.

in an aggressive manner in swerving his vehicle toward the decedent and stopping it to allow a confrontation to occur, thereby negating the first element required for self-defense.

With regard to whether Appellant could have reasonably believed he was in danger of death or serious bodily harm, the State presented testimony indicating that the decedent was unarmed when he approached Appellant and merely struck Appellant with his open hand prior to Appellant shooting him. " 'The reasonableness of a defendant's belief in the necessity of using deadly force is generally a question for the jury.' " *State v. Mitchell*, 975 S.W.2d 191, 196 (Mo.App. S.D.1998) (quoting *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984)). " '[R]eckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force.' " *Hayes*, 23 S.W.3d at 790 (quoting *Beeler*, 12 S.W.3d at 299). "[T]he jury could consistently find that the homicide involved a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary for defendant to protect himself." *Id.* Even if the jury believed Appellant was acting to defend himself from an attack by the decedent and that Appellant had not provoked the attack, "deadly force may not be used to repel a simple assault and battery." *State v. Albanese*, 920 S.W.2d 917, 924 n. 3 (Mo.App. W.D.1996). Consequently, based on the testimony that the decedent merely struck Appellant with his hands, the jury could reasonably have found Appellant did not have reasonable cause to believe that he was in danger of death or serious bodily harm and that the use of a firearm constituted unreasonable force to defend against such an attack.

The fourth element necessary for self-defense is an attempt by the Appellant to do all within his power, consistent with his or her own safety, to avoid the danger and the need to take a life. In this case, the evidence reflected that Appellant was seated in his truck throughout the altercation. The jury was not required to accept Appellant's own, self-serving testimony that he had "killed" the engine and was unable to restart the truck in order to drive away. "The jury may choose to accept or reject all, some or none of the testimony of any witness, including the defendant's testimony." *Allison*, 845 S.W.2d at 645. Therefore, the jury could reasonably have found that Appellant could have protected himself by driving off rather than shooting at the decedent. "Where a person is capable of removing himself from the scene, self-defense is not justified." *State v. Rogers*, 976 S.W.2d 529, 533 (Mo.App. W.D.1998).

Finally, we note that the jury was not required to accept Appellant's testimony that he was in fact in fear that he was in danger of death or serious bodily harm. "[Appellant]'s description of his mental state is not binding on the jury." *Mitchell*, 975 S.W.2d at 196. The jury is not bound by any self-serving claims made by Appellant and is entitled to reject any or all of his testimony as false. *State v. Gunn*, 57 S.W.3d 347, 350 (Mo.App. W.D. 2001); *State v. Rodney*, 760 S.W.2d 500, 504 (Mo.App. W.D.1988). The jury could reasonably have found that Appellant's testimony in this regard was not credible and that Appellant was not in fear of death or serious bodily harm when he shot the decedent.

While Appellant argues that the evidence upon which the State relies is not credible and/or should not have carried any weight due to inconsistencies, " '[q]uestions of credibility of a witness and

the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury.' " *State v. Bryan*, 60 S.W.3d 713, 715–16 (Mo.App. S.D.2001) (quoting *State v. Vaughn*, 32 S.W.3d 798, 799 (Mo. App. S.D.2000)). This Court " 'neither weighs the evidence, nor determines the credibility or reliability of the witnesses.' " *State v. Bell*, 62 S.W.3d 84, 96 (Mo.App. W.D.2001) (quoting *State v. Daleske*, 866 S.W.2d 476, 478 (Mo.App.W.D.1993)).

In sum, while Appellant presented enough evidence to warrant the submission of a self-defense instruction, sufficient evidence was presented from which the jury could reasonably have determined that any or all of the four elements required for self-defense were missing in this case. "It was up to the jury to resolve this conflict in the evidence and to decide whether the appellant was acting in self-defense." *State v. Gilpin*, 954 S.W.2d 570, 580 (Mo. App. W.D.1997). Accordingly, whether Appellant had a right to self-defense was a question of fact for the jury, and the record contains sufficient evidence to support the jury's determination that Appellant was not acting in self-defense. Point denied.

Appellant's third point asserts that the trial court should have set aside the verdict and entered a judgment of acquittal because the State failed to prove beyond a reasonable doubt that he did not act in self-defense. As noted in our treatment of Appellant's second point, *supra*, the jury found that the State had met its burden of proving that Appellant did not act in self-defense, and that finding was supported by the evidence. Point denied.

■ In his fifth point, Appellant argues that the trial court erred in submitting an involuntary manslaughter instruc-

tion to the jury that included language allowing them to consider whether he was the initial aggressor. He claims that no evidence was presented at trial that could support a finding that Appellant was the initial aggressor in the incident.

■ Appellant is correct that the initial aggressor language should not be used in the self-defense instruction if there is no evidence that the defendant was the initial aggressor in the incident. "Notes on Use 3(a) to MAI–CR3d 306.06 provides that '[i]f there is no evidence indicating the defendant was the initial aggressor or provoked the incident,' then the initial aggressor language of the instruction 'will not be used.' " *State v. Abdul–Khaliq*, 39 S.W.3d 880, 886 (Mo.App. W.D.2001).

■ However, as noted *supra*, testimony was presented at trial indicating that Appellant initiated the confrontation with the decedent by swerving toward him with his truck and coming so close that he almost ran over decedent's legs. While Appellant testified that he did not swerve toward the decedent and that the decedent initiated the confrontation by striking his truck with a hammer, the jury was not required to accept that testimony as credible. In any event, "[w]hen there is contradictory evidence as to who was the initial aggressor, that issue is a question of fact and is properly submitted to the jury." *Id.* at 887. Point denied.

Appellant contends in his sixth point that the trial court erred in admitting the testimony of Dennis Cadwallander regarding a conversation he had with Appellant months before the shooting in which Appellant "said he was having trouble with one of his neighbors and he guessed he was just going to have to shoot the son of a bitch." [6] Appellant argues that this testi-

6. Prior to Appellant's second trial, Mr. Cadwallander died. The State offered a tran-

script of his previous testimony into evidence, and it was admitted by the trial court.

mony was irrelevant, inflammatory, and incompetent.

The trial court is afforded broad discretion in assessing the relevance and admissibility of evidence, and its ruling on the admissibility of the evidence will not be interfered with on appeal absent a clear abuse of discretion. *State v. Hatch,* 54 S.W.3d 623, 631 (Mo.App. W.D.2001). "Evidence is admissible if it is logically and legally relevant." *State v. Crow,* 63 S.W.3d 270, 274 (Mo.App. W.D.2001). Evidence is logically relevant if it tends to prove or disprove a fact in issue. *Id.* "In order for evidence to be considered legally relevant, its prejudicial effect must be outweighed by its probative value." *Hatch,* 54 S.W.3d at 631. "This balancing of the probative value and the prejudicial effect rests within the sound discretion of the trial court." *State v. Stallings,* 957 S.W.2d 383, 390 (Mo.App. W.D.1997).

Mr. Cadwallander testified that Appellant came into his automobile repair shop for some work on his gas tank three months before the shooting. Mr. Cadwallander stated that he used to live in the same neighborhood as Appellant and that they had discussed recent events in the neighborhood while Appellant was waiting for the work on his car to be done. Mr. Cadwallander testified that Appellant "said he was having some trouble with one of his neighbors and he guessed he was just going to have to shoot the son of a bitch."

Evidence that the defendant previously threatened to act violently toward the victim tends "to show the defen-

dant's animus toward the victim as a motive to cause injury." *State v. Danikas,* 11 S.W.3d 782, 790 (Mo.App. W.D.1999). Such evidence may also tend to show intent or absence of mistake or accident. *Id.* Evidence that the defendant had a motive to cause harm to the victim "tends to discredit a claim of self-defense." *State v. DeWeese,* 751 S.W.2d 389, 393 (Mo.App. E.D.1988).

While Appellant contends that the "neighbor" referenced in the statement might not have been the decedent, significant evidence had been presented demonstrating that Appellant had numerous arguments and confrontations with the decedent. Both witness testimony and Appellant's statement to the police reflect such incidents. Furthermore, Ms. Hoyt testified that Appellant had also threatened to "blow away" the decedent on a different occasion.

While the lack of specificity in the statement could properly have been used by Appellant to try to diminish the weight given to it by the jury, we do not perceive a clear abuse of discretion on the part of the trial court in admitting the statement.[7] Indeed, in his own testimony, Appellant admitted telling Mr. Cadwallander that he might have to shoot someone that had threatened him, but he contended that he was referring to a different individual. The trial court properly left it to the jury to determine who the statement referred to and the weight to be given to Mr. Cadwallander's testimony.

7. Even if other evidence did not indicate that Appellant was referring to the decedent in his comments to Mr. Cadwallander, the testimony may have been admissible. In *State v. Graves,* 27 S.W.3d 806, 808–09 (Mo.App. W.D.2000), the trial court admitted testimony from a witness who stated that she had seen the defendant with a new gun a week prior to the shooting for which she was on trial and that the defendant had told her that "she wanted to shoot someone with it." *Id.* This Court found that the trial court did not abuse its discretion in admitting that testimony because it was probative of the defendant's intent to use her weapon. *Id.* at 809.

Appellant's comments to Mr. Cadwallander tend to show a motive on the part of Appellant to cause harm to the decedent and to discredit his claim of self-defense. The trial court could reasonably have determined that the probative value of this testimony outweighed any prejudicial effect to Appellant. We cannot say that the trial court's ruling "is clearly against the logic of the circumstances, or [that] it is arbitrary and unreasonable." *State v. Cone*, 3 S.W.3d 833, 844–45 (Mo.App. W.D. 1999). Point denied.

 In his seventh point, Appellant claims that the trial court erred in allowing John Cayton, a forensic criminalist, to testify that wounds on Appellant's forehead could have been self-inflicted. Appellant argues that this testimony was not the proper subject for expert testimony and that, even if it were, only an individual with medical training should be allowed to offer such testimony.[8]

 "Generally, it is within the trial court's sound discretion to admit or exclude an expert's testimony." *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001). " 'Because expert testimony is always fraught with questions of relevancy and competency, the decision to admit expert conclusions is a matter of trial court discretion that will not be overturned on appeal absent an abuse of discretion.' " *State v. Knese*, 985 S.W.2d 759, 768 (Mo. banc 1999) (quoting *State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo. banc 1997)). "This discretion is abused only when the ruling is clearly against the logic of the circum-

stances, or when it is arbitrary and unreasonable." *Cone*, 3 S.W.3d at 844–45.

 Appellant contends that testimony related to the cause of Appellant's facial wounds was not proper subject matter for expert testimony. "The purpose of expert testimony is to assist the jury in areas which are outside of everyday experience or lay experience." *State v. Sensabaugh*, 9 S.W.3d 677, 680 (Mo.App. E.D. 1999). Accordingly, "[e]xpert testimony is admissible on subjects about which the jurors lack experience or knowledge." *State v. Love*, 963 S.W.2d 236, 241 (Mo. App. W.D.1997). "Expert testimony is admissible unless the subject of that testimony is 'within the realm of the jury's common experience.' " *State v. Middleton*, 995 S.W.2d 443, 462 (Mo. banc 1999) (quoting *Skillicorn*, 944 S.W.2d at 892).

 "The essential test of the admissibility of expert testimony is whether such testimony will be helpful to the jury." *State v. Gola*, 870 S.W.2d 861, 864 (Mo. App. W.D.1993). "A guiding principle in applying this test is that expert testimony is proper '[i]f the subject is one with which lay jurors are not likely to be conversant. . . . On the other hand, if the subject is one of everyday experience, . . . then opinion testimony is properly rejected.' " *Id.* (quoting *State v. Marks*, 721 S.W.2d 51, 55 (Mo.App.1986)). "In ruling on the admissibility of expert testimony, the trial court considers whether such testimony assists the jury or if it unnecessarily diverts the jury's attention from relevant

---

8. In his point relied on, Appellant also argues that the trial court erred in admitting the testimony because it was not relevant. Appellant contends that the prejudicial effect of the testimony outweighed its probative value. Appellant failed to object to the testimony on relevancy grounds at trial and has therefore failed to preserve this issue for appeal. *State*

*v. Phillips*, 939 S.W.2d 502, 505 (Mo.App. W.D.1997) ("The grounds asserted on appeal are limited to those stated at trial. A litigant is not permitted to broaden the objection he presented to the trial court; he cannot rely on a theory different from the one offered at trial.") (citations omitted).

issues." *State v. Davis*, 32 S.W.3d 603, 608 (Mo.App. E.D.2000).

The cause of Appellant's injuries was clearly a relevant issue in this case. Appellant asserted that his injuries had been caused by the decedent in the course of attacking Appellant with a claw hammer, while the State presented testimony that the decedent was unarmed and had merely struck Appellant with his bare hands. The State also presented testimony indicating that Appellant had retrieved the hammer from the decedent's work area after shooting the decedent and that he was not bleeding when Ms. Hoyt first saw him after the shooting. Thus, testimony related to whether Appellant could have inflicted his injuries upon himself was relevant to the case.

With regard to Appellant's injuries, Mr. Cayton testified that Appellant's facial injuries were consistent with having been caused by the claw hammer. He further testified that Appellant had five different wounds from the hammer and that all of them were superficial and were caused by contact with only one of the two claws on the hammer. Mr. Cayton stated that the angle of the injuries indicated that they had come from Appellant's right side and that the handle of the hammer would need to have been on the right of Appellant. He testified that the wounds were consistent with Appellant striking himself right-handed with the hammer, however, he acknowledged that the injuries were also consistent with someone else on Appellant's right side having caused them.

Mr. Cayton's testimony regarding the nature of hammer claw wounds on a human being and the angle at which the wounds would have needed to be inflicted clearly fell beyond the common experience of the jury. Mr. Cayton opined that, based upon the nature of the injuries, the characteristics of the injuries from the

hammer claws, and the angle at which the wounds were inflicted, Appellant's injuries could have been self-inflicted. This testimony could have provided assistance to the jury in determining whether the decedent attacked Appellant with the hammer.

██ Appellant claims that nothing in Mr. Cayton's testimony suggests that he was qualified to testify regarding tool marks "where the human anatomy is the target," and further asserts that only an expert with medical training could properly offer opinions of that nature. Appellant does not cite any authority for his claim that a medical expert was required to offer such opinions.

 "The test of whether a witness is qualified as an expert is whether the witness has knowledge or skill from education or experience that will aid the trier of fact." *Love*, 963 S.W.2d at 241. An expert may be qualified to offer testimony on the basis of practical experience alone. *Crow*, 63 S.W.3d at 274–75.

The record clearly reflects that Mr. Cayton had significant training and experience related to wounds caused to the human body by various objects, including hammers. He stated that he is a forensic criminalist who specializes in firearms and tool marks. Mr. Cayton testified that his expertise included examining tool marks on human beings. Mr. Cayton also testified that he was a member of the International Wound Ballistics Association which studies wounds caused to the body by various objects. He further stated that he had studied the effects of various types of trauma to the body. Mr. Cayton testified that in the course of his work he had studied victims' wounds to compare with various objects that might have been used to inflict them. He also testified that he had previously examined cases in which hammers had been used as weapons.

Based upon the education and experience reflected in Mr. Cayton's *curriculum vitae* and his testimony, the trial court was well within its discretion to allow Mr. Cayton to testify about the nature of a hammer claw wound to the human body and to offer his opinion that the wounds on Appellant's face were consistent with having been self-inflicted. Mr. Cayton's testimony involved his expert opinion as a criminalist and related to technical matters that exceed the ordinary experience of jurors. The trial court did not abuse its discretion in admitting that testimony. *See Middleton*, 995 S.W.2d at 462. Point denied.

■■■ In his final point, Appellant generally contends the trial court erred in allowing into evidence hearsay testimony regarding statements made by the decedent after the shooting because they did not qualify for admission as dying declarations.[9] However, in his argument, Appellant only challenges the testimony of two of the witnesses that offered hearsay testimony related to statements made by the decedent following the shooting, Captain Dennis Dornhoffer of the St. Joseph Fire Department and Detective Sgt. Jill Voltmer of the St. Joseph Police Department. Appellant argues that those statements should not have been admitted as dying declarations because the evidence did not establish that the decedent believed his death was imminent and that he had abandoned hope of recovery.

The trial court expressly admitted Captain Dornhoffer's testimony under both the dying declaration and excited utterance exceptions. On appeal, Appellant does not challenge the trial court's ruling that the testimony could properly be admitted under the excited utterance exception to the

hearsay rule. Consequently, even if Appellant were correct that the trial court erred in finding the dying declaration exception applicable to Captain Dornhoffer's testimony, the statements would still be deemed admissible under the excited utterance exception.

■■■ We next turn to the testimony of Detective Sgt. Voltmer, whose testimony regarding hearsay statements of the decedent was admitted solely under the dying declarations exception. In order for hearsay testimony to be admissible under that exception, the State is required to demonstrate that the hearsay statements were made while the declarant believed that his or her death was imminent and that there was no hope of recovery. *State v. Smith*, 32 S.W.3d 532, 547 (Mo. banc 2000). "These beliefs, if in fact they are two separate beliefs rather than the same belief expressed differently, may be inferred from the declarant's condition and other circumstances which indicate his apprehension of imminent death." *State v. Mahone*, 699 S.W.2d 60, 62 (Mo.App. E.D. 1985). "It is the impression of almost immediate death rather than the rapid succession of death which renders the statement admissible." *State v. Liggins*, 725 S.W.2d 75, 76 (Mo.App. E.D.1987). " 'It is enough if, from all the circumstances, it satisfactorily appears that such was the condition of the declarant's mind at the time of the declarations.' " *Smith*, 32 S.W.3d at 547 (quoting *State v. Brandt*, 467 S.W.2d 948, 952 (Mo.1971)).

At the beginning of her testimony about statements made by the decedent, Detective Sgt. Voltmer was asked about Mr. Coone's demeanor. In response, Sgt. Volt-

9. By failing to specifically identify which witnesses' testimony he was challenging in his point relied on, Appellant technically failed to comply with the requirement in *Rule 84.04(d)* that he identify in the point relied on the ruling or rulings of the trial court that were being challenged.

mer stated, "He was crying and told me that he thought he was going to die and was scared he was going to die and very afraid that he was going to die." Appellant made no objection to this testimony.

 The trial court could more than reasonably have determined that this testimony was sufficient to warrant the admission of Sgt. Voltmer's remaining testimony under the dying declaration exception to the hearsay rule. "The best method of proving the state of mind of the declarant, and one frequently not available, is his express statement concerning that state of mind." *Liggins*, 725 S.W.2d at 76. Furthermore, testimony had previously been offered indicating the serious nature of Mr. Coone's injury which had rendered him paralyzed, resulted in significant blood loss, and made it difficult for him to breathe. It is difficult to make a stronger case for admitting evidence under the dying declaration exception than where the decedent expresses his belief in his imminent death from a gunshot wound to a vital part of his body while he is in an emotional state. *See Id.* The trial court did not err in admitting the testimony of Sgt. Voltmer into evidence.

Moreover, testimony substantially similar to that of Captain Dornhoffer and Sgt. Voltmer was contained in the testimony of Sgt. Wilson of the St. Joseph police department, Patti Byrne, an emergency room nurse, and Ms. Hoyt, the decedent's girlfriend. All of these individuals testified about the comments made to them by the decedent regarding the incident with Appellant, and the admission of that testimony is not challenged on appeal. Thus, even if the testimony of Captain Dornhoffer and/or Sgt. Voltmer had been erroneously admitted, Appellant could not establish prejudice resulting from the admission of that testimony because other evidence was presented establishing essentially the

same facts. *State v. Ponder*, 950 S.W.2d 900, 910 (Mo.App. S.D.1997). Point denied.

The judgment is affirmed.

All concur.