STATE of Missouri, Respondent,

v.

Clyde SMITH, Appellant.

No. 12327.

Missouri Court of Appeals,
Southern District,
Division One.

July 5, 1983.

Motion for Rehearing or to Transfer to
Supreme Court Denied July 21, 1983.

Application to Transfer Denied
Sept. 20, 1983.

John D. Ashcroft, Atty. Gen., Kristie Green, Charles E. Smarr, Asst. Attys. Gen., Jefferson City, for respondent.

W. Dale Burke, Monett, for appellant.

TITUS, Judge.

An information filed April 30, 1980, charged defendant with stealing 86 cattle owned by Joe and James Jackson. On April 24, 1981, the day of trial but before any evidence was heard, and over defendant's objections, the court permitted the state to amend the information so as to accuse defendant of stealing 87 cattle. The jury found defendant guilty and, per the verdict, he was sentenced to imprisonment for a term of seven years. §§ 570.030 and 558.-011.[1] Defendant appealed.

Defendant's first point relied on is that the trial court erred in permitting the amendment to the information as noted, supra, and in not remanding the cause for a new preliminary hearing. Under § 545.300 and Rule 23.08 the information may be amended at the time done in this case provided no different or additional offense is charged and defendant's substantial rights are not prejudiced by the amendment. *State v. Goree,* 633 S.W.2d 758, 759[1] (Mo. App.1982). The amendment here simply accused defendant of stealing 87 instead of 86 cattle. In *State v. Phillips,* 511 S.W.2d 841, 844[4] (Mo.1974), defendant was not permitted to successfully complain of an amendment which charged him with taking $250 in a robbery instead of $200 as originally charged. As the amendment in the instant case did not charge an additional or different offense the question then is the alleged prejudice to defendant. The test of prejudice is whether a defense under a charge as first made would be equally available after the amendment and whether defendant's evidence would be equally applicable after, as well as before, the amendment. *State v. Leake,* 608 S.W.2d 564, 565[2] (Mo.App. 1980). The answer to both test questions in this instance is "Yes" and defendant's first point is denied.

At the end of the voir dire examination of prospective jurors the state moved

---

1. Statutory and rule references are to V.A.M.S. and V.A.M.R.

to strike venire persons Southers and Skinner for cause, and the court obliged. Defendant now claims this was error and, without stating "wherein and why" contrary to Rule 30.06(d), says the two stricken "proved themselves to be impartial and qualified to serve" and that the court's action deprived him of "a jury panel fairly representing a cross-section of the community." Mrs. Skinner said it was against her belief to sit in judgment of her fellow man and Mr. Southers avowed it was not his place to sit in judgment of someone else, and unless he personally saw accused commit the crime charged, he could not say the accused was guilty. "In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. . . . We should also keep in mind that the trial court is in a better position, by reason of its presence and personal observation, to determine the validity of a challenge for cause than is an appellate court when reviewing the record. . . . The challenged venirem[e]n clearly indicated a misconception of [their] duties as [jurors], and . . . expressed a substantial doubt as to [their] willingness or ability to follow the law as declared by the court in its instructions. In these circumstances there was no abuse of discretion on the part of the trial court in sustaining the State's challenge for cause." *State v. Weekley,* 621 S.W.2d 256, 258[1, 2] (Mo.1981). Also see *State v. Grady,* 649 S.W.2d 240, 244 (Mo.App.1983). Defendant's second point relied on is denied.

Defendant's third point relied on is that the trial court erred in not striking, at defendant's request, veniremen Owens, Troutman, Keith and Reser who were, respectively, a stock farmer, a cattle farmer, a dairy farmer and a retired dairy farmer. He contends they were prejudiced against him by reason of their occupations and of the crime charged, thereby depriving him of a qualified panel and his statutory number of peremptory challenges.

The weakness of this point is illustrated by the fact that when veniremen Owens, Troutman and Keith were asked by defense counsel whether their occupations would tend to prejudice them against a person accused of stealing cattle, each replied in the negative and indicated they could judge the case fairly. When asked similar questions, venireman Reser first stated "I don't know really . . . I think I might." However, when later asked by the court if he could sit "as a fair and impartial juror and listen to the evidence and instructions and give the Defendant a fair hearing and give the State a fair hearing," Reser answered, "I think so."

■ The criminally accused is entitled to fair and impartial jurors who admittedly will follow the law. To protect such a right, defendant must be given a full panel of qualified veniremen from which to make his allotted peremptory challenges. Albeit a trial court's refusal to sustain a valid challenge for cause constitutes reversible error, the trial court possesses wide discretion to determine the qualifications of a venireman. Its decision thereon will not be disturbed upon appeal absent a showing of a clear abuse of discretion and a real probability of harm to the defendant. No hard and fast line may be drawn as to when a challenge for cause should be sustained vel non. There are instances when an appellate court may have done differently than the trial court but, nevertheless, cannot say there was an abuse of discretion. Each case must be judged on its particular facts. The trial judge's determination of the qualifications of prospective jurors necessarily involves a judgment based upon personal observation of each venireman's demeanor and the nuance of his answers in determining whether he would be fair and impartial if chosen as a juror. As the trial judge is in a far better position than we from a cold record to make that determination, any doubts as to the trial court's findings will be resolved in its favor. *State v. Smith,* 649 S.W.2d 417, 421–422[2–7] (Mo. banc 1983). Based on these tenets and what we have noted concerning the voir dire examination of the four veniremen in question, we find

no abuse of discretion by the trial court and deny the third point relied on.

In utter disregard of the mandates of Rule 30.06(d), defendant's fourth point verbatim reads: "The trial court erred in overruling defendant-appellant's motion for judgment of acquittal at the close of all the evidence for the reason that there was not substantial evidence to sustain a judgment of conviction in that the credible evidence showed the defendant-appellant to be innocent."

At the trial defendant stipulated that 87 head of cattle had been stolen from the Jackson brothers but testified he had absolutely nothing to do with the theft. On the other hand, the state's evidence, via Charles Friend (an admitted accomplice of defendant), Shirley Smith (defendant's ex-wife) and Patricia Friend (Charles Friend's wife), was that on December 4, 1979, Charles Friend, Benny Friend, Roger Brown and defendant stole the cattle, transported them by truck to Tyro, Kansas, and delivered them to John Nunley, a cattle dealer. A few days thereafter Charles and Patricia Friend and defendant and his then wife returned to Nunley's house and were given approximately $30,000 from the sale of the stolen cattle. This money was later divided among those, including defendant, who participated in stealing the cattle.

Defendant's argument to the "point" is that the state's three main witnesses "had every reason and motive to lie" because Charles Friend was cooperating with the authorities under an admitted deal wherein he would receive concurrent time on his involvement in the present case with sentences on other convictions; because Shirley Smith wanted to get even with defendant after an admitted bitter divorce; and because Patricia Friend backed up her husband's story so he could get out of prison sooner.

■ It was the jury's prerogative to determine the weight and credibility of the testimony of the state's witnesses and to believe or disbelieve all, part or none of their testimony even if some of that testimony is that of an admitted accomplice.

*State v. Dick,* 636 S.W.2d 425, 427[3, 4] (Mo.App.1982). Determination of the credibility of an admitted accomplice as a state's witness is for the jury. *State v. Light,* 563 S.W.2d 782, 784[3] (Mo.App.1978). Also, regardless of any individual attitudes or remembrances concerning the facts of the case, albeit the credibility of a witness may have been adroitly questioned, that credibility was for the jury as trier of the facts. *State v. Netzer,* 579 S.W.2d 170, 173[1] (Mo. App.1979). Defendant's fourth point relied on is denied.

■ Defendant's fifth point relied on is to the effect that the trial court erred in giving Instruction No. 5 because it "was a fatal variance from the information." As already noted, the information charged defendant with stealing cattle. The instruction, in accordance with the above recited state's evidence, charged the jury to find defendant guilty if either before or during the commission of the offense he aided Charles Friend, Benny Friend and Roger Brown in stealing the cattle. Under § 562.-041–1(2) "[a] person is criminally responsible for the conduct of another when . . . either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Albeit, as defendant says, he was charged in the information as a principal, yet it was proper to submit either active participation or aiding and abetting by the instruction. *State v. Easton,* 577 S.W.2d 953, 957–958[4, 5] (Mo. App.1979), cert. denied 444 U.S. 863, 100 S.Ct. 131, 62 L.Ed.2d 85, and the cases there cited. Defendant's point is denied.

■ The final point relied on by defendant is that although he voiced no objection to the court nisi either at trial or in his motion for a new trial, the trial court committed plain error in allowing the state to cross-examine defendant's character witness concerning prior arrests. Defendant's witness said he had known the defendant all his life, that defendant had always been

truthful and that defendant's reputation was good. Upon cross-examination of the witness, the prosecuting attorney, inter alia, inquired if the witness was aware that defendant had been arrested for trespassing, attempted felonious assault, common assault, stealing cattle and conspiracy to commit murder. "The rule in this state is that a witness to defendant's good reputation may be cross-examined as to the facts of prior arrests or rumors of misconduct of the defendant, not to establish the truth of those facts or rumors, but to test the credibility of the witness and to ascertain what weight should be given to this testimony.... Such cross-examination tends to show either that the witness is in fact unfamiliar with defendant's reputation or he is being untruthful, or his standard of what constitutes good reputation is unsound." *State v. Burr*, 542 S.W.2d 527, 532[7] (Mo. App.1976). Defendant's final point is denied.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.