STATE of Missouri, Respondent,

v.

Kevin Eugene RILEY, Appellant.

No. WD 65138.

Missouri Court of Appeals, Western District.

Nov. 21, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2007.

Application for Transfer Denied Feb. 27, 2007.

Emmett D. Queener, Columbia, MO, for appellant.

Lisa Kennedy, Assistant Attorney General, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, C.J., BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

Kevin Riley appeals his conviction and sentence for third degree domestic assault, under section 565.074, RSMo 2000, manufacturing a controlled substance, methamphetamine, under section 195.211, RSMo Cum.Supp.2004, possession of a controlled substance, methamphetamine, under section 195.202, RSMo Cum.Supp.2004, and possession of drug paraphernalia with intent to manufacture a controlled substance, methamphetamine, under section 195.233, RSMo 2000.[1] The trial court sentenced Mr. Riley, as a prior and persistent offender, to six months in the county jail for domestic assault, twenty-five years in prison without parole for the manufacturing charge, twenty years in prison for possession of methamphetamine, and seven years in prison for possession of paraphernalia with intent to manufacture methamphetamine, with all sentences to run concurrently.

Mr. Riley raises five points on appeal. In his first point, he asserts that the trial court abused its discretion in denying his motion to strike venire member David Rimmer for cause because Mr. Rimmer gave an equivocal answer regarding whether he could be a fair and impartial juror in light of his private legal contacts with the prosecuting attorney. In his second point, Mr. Riley claims that the trial court abused its discretion in permitting the prosecutor to examine a police officer during redirect examination regarding Mr. Riley's appearance in the early morning hours following Mr. Riley's arrest because the testimony was outside the scope of cross-examination. In his third point, Mr. Riley contends that the trial court abused its discretion in refusing to allow him to present evidence that his wife, Amanda Riley, tested positive for methamphetamine a week to ten days before his trial.

In his fourth point, Mr. Riley asserts that the trial court plainly erred in convicting and sentencing him to class A felonies for manufacturing methamphetamine, under section 195.211, and possession of methamphetamine, under section 195.202, because those offenses, as charged and submitted to the jury, are class B and C felonies, respectively. In his fifth point, Mr. Riley claims that the trial court erred in sentencing him as a prior and persistent offender because the State failed to present sufficient evidence that the person identified in the prior convictions was the same person being prosecuted at trial.

The State concedes Mr. Riley's fourth point on appeal, acknowledging that the trial court erred in convicting and sentencing Mr. Riley to class A felonies for manufacturing methamphetamine, under section 195.211, and possession of methamphetamine, under section 195.202, because those offenses, as charged and submitted to the jury, are actually class B and C felonies, respectively. Therefore, the trial court's judgment is reversed and remanded for entry of a proper judgment reflecting that Mr. Riley's conviction for manufacturing methamphetamine is a class B felony and his conviction for possession of methamphetamine is a class C felony. Be-

1. All statutory references to sections 565.074 and 195.233 are to the Revised Statutes of Missouri 2000. All statutory references to sections 195.211 and 195.202 are to the 2004 Cumulative Supplement to the Revised Statutes of Missouri 2000.

cause Mr. Riley's sentence was enhanced based on his status as a prior and persistent offender, however, the misclassification of the class of felony for those convictions does not impact Mr. Riley's sentence. Finding no other error, the trial court's judgment is affirmed in all other respects.

### Factual and Procedural Background

In February 2004, Mr. Riley, his wife, Amanda Riley, and their two children lived at a home on Benton Street in Marshall. Because Mr. Riley and Amanda[2] were not getting along, on February 4, 2004, Amanda left her home and took the children and went to live with her mother. On February 8, 2004, about 4:30 or 5:00 P.M., Amanda brought the children home in an attempt to work things out with Mr. Riley. After she returned home, Amanda cooked the children dinner and then she and Mr. Riley began arguing. Mr. Riley told Amanda to "keep [her] mouth shut because there was stuff in the house and he didn't want the cops called." Amanda told Mr. Riley to "get it out." Mr. Riley then hit Amanda in the face, grabbed her by the neck, threw her down on the ground, kicked her a couple of times, and choked her. When Mr. Riley went into the bedroom, Amanda ran out of the house, without wearing any shoes or a coat, and went to her neighbor's house, Jeremy Gaba. When she arrived at Mr. Gaba's house, she was "frantic," crying, and her lip was swollen and bleeding. Mr. Gaba called the police and Amanda called her mother.

About five minutes later, Officer Joyce George with the Marshall Police Department arrived at Mr. Gaba's house. A few minutes later, Officers Robert Coney and Jeremy Deal arrived on the scene. Officer George talked with Amanda and Officers

Coney and Deal went to the Riley's home and arrested Mr. Riley. Officer Deal took Mr. Riley to the police station. A few minutes later, Amanda returned home, got the children, and when her mother arrived, they drove to the police station. About 7:45 or 8:00 P.M., after giving a statement to Officer George, Amanda left the police station and went to her mother's house.

About 8:25 P.M., Amanda called Officer George at the police station and told her that they needed to do a drug test on Mr. Riley. She told Officer George this information because she knew that both she and Mr. Riley needed help getting off drugs and if she said something to the police then Mr. Riley might get help. She also told Officer George that she had found a baggie of methamphetamine on the computer table in the bedroom of her house and had thrown it in the kitchen trash can. Officer George then asked Amanda to meet the police back at the house. Amanda agreed.

After Amanda's call, Officers Coney and Deal and Officer Adam Benne went to the Riley's house. A few minutes after the officers arrived, Amanda got there and let the officers in the house. The officers, however, did not find a baggie of methamphetamine in the kitchen trash can. When no methamphetamine was found, Amanda told the officers that Mr. Riley must have taken it out of the trash can.[3] Amanda then gave the officers her written consent to search the rest of the house. After giving her consent, Amanda returned to the police station and provided another statement.

During their search of the Riley's house, officers seized a number of items from the

---

2. To avoid confusion, Ms. Riley is referred to by her first name. No disrespect is intended.

3. At trial, Amanda admitted that she lied about throwing a baggie of methamphetamine in the trash can.

bedroom and the laundry room, including a propane bottle with a brass torch nozzle, plastic tubing, an electric hotplate, a latex glove, coffee filters with residue, hypodermic syringes, two spoons containing white residue, a light bulb with the end of the bulb punched out and a hole through the bulb, and a green plastic bucket. On top of the green bucket was a can of Coleman fuel. Inside the green bucket were a funnel and a black plastic container with a mason jar inside a ziplock baggie, which gave off an odor of anhydrous ammonia. Also inside the green bucket was a peroxide bottle with a plastic tube and shut-off valve inside another mason jar.

Upon searching the house, officers also discovered a detached garage with boarded up windows. The door to the garage was padlocked. After this discovery, Officer Coney returned to the police station to get Amanda's consent to search the garage. After receiving Amanda's consent, the officers found that a light bulb in the garage was covered with a piece of cardboard to keep the light from shining beyond the immediate area. Officers also seized several Coleman fuel cans; a fan with an electric motor mounted to a workbench; some mason jars; a plastic grocery bag, which contained the remains of lithium batteries; a box labeled "Kev's box," which contained a videotape of an intimate nature of Mr. Riley and another woman other than his wife; and inside a plastic container, a melted 16–ounce plastic soda bottle.

The next day, about 9:30 A.M., Detective Sergeant John Bradley Bartlett interviewed Mr. Riley. Mr. Riley told Detective Bartlett that he used methamphetamine and that while he knew how to make it, he had not made any for a couple of months. Mr. Riley also told Detective Bartlett that Amanda knew how to make methamphetamine but, to his knowledge, had never done so. Mr. Riley claimed that the drugs in his house belonged to Amanda and denied having knowledge about the "meth lab" in the laundry room or the garage. Detective Bartlett also stated that, in the early morning hours after Mr. Riley was arrested, Mr. Riley appeared to be "jittery, nervous," "[h]is eyes were fixed and dilated," and "[h]e had the appearance of people ... under the influence of methamphetamine."

Samples of a liquid and powder found in the mason jars seized from the Riley's house tested positive for the presence of methamphetamine. Residue found on one of the coffee filters seized from the Riley's house also tested positive for the presence of methamphetamine. Consequently, on February 20, 2004, the State filed a four-count felony information against Mr. Riley, charging him with second degree domestic assault, manufacture of a controlled substance, possession of a controlled substance, and possession of drug paraphernalia with the intent to manufacture a controlled substance. Following a two-day trial, a jury found Mr. Riley guilty on all counts, with the domestic assault count lowered to a third-degree misdemeanor.

On December 27, 2004, Mr. Riley filed a motion for new trial. Following a hearing on Mr. Riley's motion, the trial court denied the motion and sentenced Mr. Riley, as a prior and persistent offender, to six months in the county jail for the domestic assault charge, twenty-five years in prison without parole for the manufacturing charge, twenty years in prison for the possession charge, and seven years in prison for the possession of drug paraphernalia charge, with all sentences to run concurrently. Thereafter, Mr. Riley filed this appeal.

## No Abuse of Discretion in Failure to Strike Venireperson

In his first point on appeal, Mr. Riley asserts that the trial court abused its dis-

cretion in denying his motion to strike venire member David Rimmer for cause. In particular, Mr. Riley claims that Mr. Rimmer should have been struck for cause because he gave an equivocal answer regarding whether he could be a fair and impartial juror in light of his private legal contacts with the prosecuting attorney.

During voir dire, the prosecutor, Donald Stouffer, asked the venire panel whether anyone had a personal relationship with him, or some knowledge about his office. Two venire members answered affirmatively. First, Maxine Pancoast indicated that her daughter worked in the prosecutor's office, but there was nothing about that relationship that would make it impossible for her to be a fair and impartial juror. In addition, Ms. Pancoast stated, "I think I could be fair and impartial." Second, venire member Tipton answered affirmatively regarding a relationship with the prosecutor's office.[4] Ms. Tipton further indicated that she would have a problem following the judge's instruction on the law and it would be impossible for her to be fair and impartial.

When defense counsel began its voir dire, defense counsel told the venire panel that, in addition to being the prosecutor, Mr. Stouffer also had a private practice. Defense counsel asked if anyone was a private client of the prosecutor. Five venire members raised their hands. Of the five, three venire members indicated that Mr. Stouffer had been their attorney in the past. Venire member Dryer indicated that Mr. Stouffer was currently working on a business matter for her. Venire member Phillips then stated that Mr. Stouffer had been his attorney about nineteen years ago. When defense counsel asked Mr. Phillips if he could "be fair and impartial here today," Mr. Phillips answered, "Yes, sir." After Mr. Phillips responded, venire member Rimmer stated that Mr. Stouffer was his employer's lawyer. Defense counsel then asked Mr. Rimmer if he thought it would be difficult for him to sit on this case with Mr. Stouffer being the prosecutor and hear Mr. Stouffer try this case. Mr. Rimmer responded, "I think I could be fair." No follow-up questions to Mr. Rimmer's answer were asked.

While the parties were selecting the jury, defense counsel moved to strike Ms. Pancoast for cause on the grounds that having Ms. Pancoast on the jury would "be almost like having . . . [her daughter] sitting on the jury." The prosecutor objected to striking Ms. Pancoast. The trial court, however, struck Ms. Pancoast for cause. Defense counsel and the prosecutor both agreed by stipulation that Ms. Tipton should be struck for cause. Consequently, the trial court struck Ms. Tipton.

Defense counsel also moved that Mr. Stouffer's current clients be stricken for cause. In addition to arguing that the prosecutor's current clients be stricken, regarding Mr. Rimmer, defense counsel further argued that Mr. Rimmer's response that he thought he could be fair was not "positive enough" and his response "shows there is doubt." In response, the trial court noted, "I wrote down—I heard him say he could be fair." In addition, the court further stated, "I didn't think that that line of questioning was necessarily—I mean, the answer was necessarily going to declare him to be stricken for cause, so I did write—I mean, put quotes around what he said, but I made a note that I thought he could be fair."

4. At the request of Ms. Tipton, the court held a conference off the record and outside the presence of the rest of the venire panel regarding her relationship with the prosecutor's office.

The court also asked Mr. Stouffer if he knew Mr. Rimmer prior to that day. Mr. Stouffer informed the court that Mr. Rimmer works for Missouri Valley Human Resources, a firm Mr. Stouffer represents a couple of times a year on personnel matters. Mr. Stouffer further indicated that while he did know Mr. Rimmer, he only "rarely" deals with him. At this point, defense counsel again argued that Mr. Rimmer should be stricken for cause because Mr. Rimmer did not say that he could be fair. In response, the court stated, "In thinking through that, I do think that he did say I think. I think I can be fair. Now, does that make a difference, though?"

In response to the trial court's question, Mr. Stouffer stated, "I don't think. I think the standard is that there has to be a positive indication they can be fair. I think equivocal responses are—[.]" The trial court then interjected, "Subject matter of strike for—or preemptory strike?" Mr. Stouffer agreed with the court. Defense counsel then brought up the issue of Ms. Dryer. In particular, defense counsel argued that Ms. Dryer should be struck for cause because she was a current client of Mr. Stouffer. Defense counsel also stated that he did not ask Ms. Dryer if she could be fair because he was sure the court would strike her for cause because she was a current client of Mr. Stouffer.

The trial court then stated, "I don't have an affirmative answer from either [Mr. Rimmer or Ms. Dryer] as to whether— that they could not be fair in impartially deciding the case, but I do have indication that they are both involved in Mr. Stouffer's legal practice at the present time." After the trial court's statement, the discussion returned to other members of the venire panel.

Finally, after a recess was taken to allow defense counsel an opportunity to find case law regarding whether current clients of an attorney should be allowed to remain on the jury, the trial court returned to the issue of Mr. Rimmer and Ms. Dryer. The court stated, "everybody has asked questions of [the jurors who are clients of Mr. Stouffer] and they have not indicated a strong bias for that reason, or inability to render a fair and impartial verdict in this case." In addition, because defense counsel was unable to find case law to support his argument that current clients of an attorney should be stricken for cause, the trial court denied defense counsel's request to strike Mr. Rimmer and Ms. Dryer.

After the trial court's ruling, defense counsel asked the court to reconsider its ruling with respect to Mr. Rimmer. Specifically, defense counsel argued that because Mr. Rimmer only indicated that he thought he could be fair, he should be stricken. In denying defense counsel's motion, the court stated, "What we are after is 12 people who are most likely to render a fair and impartial verdict.... And I believe I have now stricken everybody that I think indicated an inability to arrive at a fair and impartial verdict." Ultimately, Mr. Rimmer served on the jury and was selected as jury foreman. Ms. Dryer served as the alternate juror. In his motion for new trial, Mr. Riley asserted, among other things, that the trial court erred in not granting his motion to strike Mr. Rimmer and Ms. Dryer because they were clients of the prosecuting attorney.

 On appeal, the State argues that Mr. Riley has not properly preserved this issue for appeal and this court's review should be only for plain error. Specifically, the State contends that Mr. Riley failed to preserve the issue of whether the trial court erred in failing to strike Mr. Rimmer based on his response that Mr. Rimmer

"thought" he could be fair because the issue was not included in Mr. Riley's motion for new trial. The State correctly notes that Mr. Riley did not raise this issue in his motion for new trial but, rather, merely argued that the trial court erred in failing to strike Mr. Rimmer because he was a client of the prosecuting attorney. Thus, even though defense counsel did object at trial to the court's failure to strike Mr. Rimmer based on his response that he "thought" he could be fair, Mr. Riley did not raise this issue in his motion for new trial. Therefore, the State correctly asserts that Mr. Riley has failed to preserve this issue for appellate review. *State v. Lyles*, 996 S.W.2d 713, 716 (Mo.App. E.D.1999) (even though defense counsel objected at trial, failure to raise the issue in motion for new trial does not preserve claim for appellate review). Therefore, Mr. Riley's claim will be reviewed only for plain error.

This court conducts a two-step review for plain error. *State v. Bode*, 125 S.W.3d 924, 927 (Mo.App. W.D.2004). In the first step, this court examines the record to determine whether the trial court committed error, affecting substantial rights, that was "evident, obvious, and clear." *Id.* If such error is discovered, this court moves on to the second step. *Id.* In the second step, this court must determine whether a manifest injustice or a miscarriage of justice resulted from the error. *Id.* Only if the error caused such an injustice will this court reverse the conviction. *State v. Franklin*, 144 S.W.3d 355, 359 (Mo.App. S.D.2004). Mr. Riley bears the burden of demonstrating plain error and the existence of a manifest injustice or miscarriage of justice. *Id.*

Mr. Riley claims that he was denied a fair trial before a fair and impartial jury because Mr. Rimmer provided an equivocal answer regarding whether he could be fair and impartial based on his relationship with the prosecutor. A criminal defendant "is entitled to fair and impartial jurors who admittedly will follow the law." *State v. Smith*, 655 S.W.2d 745, 747 (Mo.App. S.D.1983). "To protect such a right, [a] defendant must be given a full panel of qualified veniremen from which to make his allotted peremptory challenges." *Id.* While refusal to sustain a valid challenge for cause constitutes reversible error, "the trial court possesses wide discretion to determine the qualifications of a venireman." *Id.* Thus, this court will not disturb a trial court's decision regarding this issue "absent a showing of a clear abuse of discretion and a real probability of harm to the defendant." *Id.* In addition, "[t]here are instances when an appellate court may have done differently than the trial court but, nevertheless, cannot say there was an abuse of discretion." *Id.*

"The trial judge's determination of the qualifications of prospective jurors necessarily involves a judgment based upon personal observation of each venireman's demeanor and the nuance of his answers in determining whether he would be fair and impartial if chosen as a juror." *Id.* Here, after Mr. Rimmer's response that he thought he could be fair, the trial court noted, "I wrote down—I heard him say he could be fair." In addition, the court further stated, "I didn't think that that line of questioning was necessarily—I mean, the answer was necessarily going to declare him to be stricken for cause, so I did write—I mean, put quotes around what he said, but I made a note that I thought he could be fair." Thus, it is clear from the trial court's observation of Mr. Rimmer's response, that the court believed that Mr. Rimmer's demeanor and tone of voice indicated that Mr. Rimmer's answer was an affirmative response. The trial court is in a far superior position than this

court, which must only observe the cold record, to observe Mr. Rimmer's demeanor and the nuance of his answer. *Id.* "[A]ny doubts as to the trial court's findings will be resolved in its favor." *Id.*

Moreover, as the Missouri Supreme Court has aptly noted, "[T]he response 'I think so' is not equivocal in the context of voir dire questioning; it is common vernacular to express a positive response." *State v. Wise,* 879 S.W.2d 494, 514 n. 10 (Mo. banc 1994). *See also State v. Mercer,* 618 S.W.2d 1, 7 (Mo. banc 1981) (response, "I don't think so," not equivocal in context of voir dire questioning but, rather, "common vernacular to express a negative"); *State v. Pride,* 567 S.W.2d 426, 433 (Mo. App.1978) ("idiom 'I don't really think so'" not equivocation but, rather, "common vernacular to express a negative"). Based on the trial court's observations of Mr. Rimmer's response, "I think I could be fair," the trial court clearly believed that Mr. Rimmer was simply using "common vernacular" to express his agreement with defense counsel's question as to whether he could be fair and impartial.

■ Nevertheless, even though the trial court specifically found that Mr. Rimmer's response demonstrated that he could be a fair and impartial juror, Mr. Riley argues that the trial court actually concluded that Mr. Rimmer's response was equivocal. In support of his argument, he points to the following comment by the trial court concerning Mr. Rimmer's response: "In thinking through that, I do think that he did say I think. I think I can be fair. Now, does that make a difference, though?" This court does not interpret

the court's comment as indicating that the trial court believed that Mr. Rimmer's "I think so" response was not an affirmative response. To understand the court's comment, it must be placed in the proper context. Regarding this issue, the following exchange occurred:

[DEFENSE COUNSEL]: ... Mr. Rimmer clearly—and probably—actually, he didn't say I can be fair, but he said, I think I can be fair. But if you want to look for a case, I'll go back to [Ms.] Dryer. We can hold [Mr.] Rimmer aside.

[THE COURT]: In thinking through that, I do think that he did say I think. I think I can be fair. Now, does that make a difference, though?

[THE PROSECUTOR]: I don't think. I think the standard is that there has to be a positive indication they can be fair. I think equivocal responses are—

[THE COURT]: Subject matter of strike for—or peremptory strike?

[THE PROSECUTOR]: Right.

[THE COURT]: That was my recollection. If you want to take a minute to go look that up.

When viewed in the proper context, given defense counsel's comment about finding case law on the issue, and the court's reply regarding whether the subject matter concerned a strike, allegedly for cause, or a peremptory strike, it is apparent that the court's comment concerned the proper procedure for challenging Mr. Rimmer's response.[5] This court does not view the court's question, "does that make a differ-

5. Because the transcript has a question mark at the end of the trial court's comment regarding the proper procedure to challenge an equivocal response, and the prosecutor's reply was simply, "Right," this court is unable to discern whether the trial court believed that an equivocal response was the proper subject matter for a strike for cause or a peremptory strike. It should be noted that when a prospective juror makes an equivocal statement, the proper procedure is to strike the venireperson for cause. *See State v. Clark–Ramsey,* 88 S.W.3d 484, 490–91 (Mo. App. W.D.2002).

ence, though?" as commenting on any equivocation of Mr. Rimmer's response. Rather, as discussed above, the trial court clearly stated its belief that Mr. Rimmer could be a fair and impartial juror based on Mr. Rimmer's response.

Moreover, given the length of the discussion on the issue, it is apparent that the trial court carefully considered Mr. Riley's challenge to Mr. Rimmer. In fact, the trial court did take a break to allow Mr. Riley's counsel to attempt to find case law supporting his challenge. In addition, before finally overruling Mr. Riley's motion to strike Mr. Rimmer, the trial judge again reiterated his conclusion that he believed that Mr. Rimmer would be a fair and impartial juror based on Mr. Rimmer's response. In particular, the trial court stated, "I believe I have now stricken everybody that I think indicated an inability to arrive at a fair and impartial verdict." Consequently, the trial court did not abuse its discretion in failing to strike Mr. Rimmer for cause and, therefore, this court finds no plain error. Point denied.[6]

### No Error in Allowing State to Introduce Evidence Out of Order

■ In his second point on appeal, Mr. Riley asserts that the trial court abused its discretion in permitting the prosecutor to examine Detective Bartlett during redirect examination regarding Mr. Riley's appearance in the early morning hours following Mr. Riley's arrest. Mr. Riley claims that such questioning was outside the scope of cross-examination. Specifically, Mr. Riley contends that because Detective Bartlett's testimony "did not refute, weaken, or remove unfavorable inferences created in cross-examination," it was outside the scope of cross-examination. Mr. Riley asserts that he was prejudiced by Detective Bartlett's testimony because evidence of his intoxication from methamphetamine "was evidence of his guilt of the crimes charged."

Here, after the State finished its direct examination of Detective Bartlett, Mr. Riley's counsel began his cross-examination. After Mr. Riley's counsel asked Detective Bartlett about five questions, the prosecutor interrupted defense counsel and asked to approach the bench. The prosecutor told the trial court that, in his "haste" he had "about six more questions [he] need[ed] to ask [Detective Bartlett] about taking a statement from [Mr. Riley]." Mr. Riley's counsel began to object on the basis of abandonment, when the prosecutor replied, "I haven't abandoned anything." The prosecutor added, "[Defense counsel] understand[s] what I want to do and [he

---

**6.** Mr. Riley also argues that the trial court abused its discretion in failing to strike Mr. Rimmer because its decision defies logic. Specifically, Mr. Riley argues that the court's decision to strike Ms. Pancoast for cause based on her "I think so" response is inconsistent with its decision not to strike Mr. Rimmer for his "I think so" answer. At trial, however, Mr. Riley's counsel moved to strike Ms. Pancoast for cause because her daughter worked for the prosecutor's office, not because she gave an "I think so" answer. In fact, regarding Ms. Pancoast's response, "I think I could be fair and impartial," defense counsel argued at trial that her response demonstrated that "she could be fair." Thus, at trial, defense counsel viewed Ms. Pancoast's "I think so" response as "common vernacular" for an affirmative answer. On appeal, however, defense counsel makes the opposite argument with regard to Mr. Rimmer's "I think so" response. Moreover, based on the trial court's superior ability to observe the witnesses' demeanor and tone of voice, it is within the trial court's discretion to determine whether an "I think so" response is an equivocation or instead merely common vernacular to express an affirmative response. Because the trial court's rulings with respect to Mr. Rimmer and Ms. Pancoast were not inconsistent, Mr. Riley's argument is without merit.

is] aware of it now." The court then ruled, "I'm going to let him do it. I'm going to wait until after [cross-examination] and then [defense counsel] can go back after if [he] want[s]."

After defense counsel finished his cross-examination of Detective Bartlett, the court allowed the prosecutor an opportunity for redirect examination. When the prosecutor asked Detective Bartlett about Mr. Riley's appearance on the night he was arrested, defense counsel objected on the grounds that the question was beyond the scope of direct examination.[7] The court overruled the objection and stated, "I would permit [defense counsel] the same latitude if the situation arose." The trial court added, "We haven't got to that side of the case." The court then allowed the prosecutor to question Detective Bartlett about Mr. Riley's appearance in the early morning hours after he was arrested. Mr. Riley argues that Detective Bartlett's testimony did not refute, weaken, or remove unfavorable inferences created in cross-examination and, therefore, was outside the scope of cross-examination and should not have been admitted.

The State, on the other hand, argues that the challenged portion of the prosecutor's redirect examination of Detective Bartlett was not redirect examination "in the traditional sense." The State's argument is essentially that what the trial court did was allow the prosecutor to "reopen its direct [examination] of [Detective] Bartlett in order to ask him additional questions that the prosecutor had forgotten to ask during direct." Thus, the State concludes that while the prosecutor's questioning may have actually been asked during what was termed "redirect" examination, those additional questions were simply a continuation of the prosecutor's direct examination. This court agrees.

As set forth above, when the prosecutor informed the court that he had forgotten to ask Detective Bartlett about six questions, the trial court indicated that it would allow the State to ask its questions and then allow the defense to cross-examine the witness on the additional testimony. In addition, when the State began to ask its additional questions during "redirect" and defense counsel objected on the grounds that the questions were outside the scope of cross-examination, the trial court overruled the objection stating, "I would permit you the same latitude if the situation arose." This court interprets the trial court's ruling as simply allowing the prosecutor to continue his direct examination of Detective Bartlett after defense counsel finished its cross-examination. In other words, the trial court simply allowed the prosecutor to present its evidence in its case-in-chief out of order. The admission of evidence out of order rests almost entirely within the discretion of the trial court. *See State v. Walker*, 531 S.W.2d 55, 57–58 (Mo.App.1975). In addition, because the trial court allowed defense counsel an additional opportunity to cross-examine Detective Bartlett regarding the additional questions the prosecutor asked, Mr. Riley suffered no prejudice from the presentation of the State's evidence out of order. Consequently, the trial court did not abuse its discretion in permitting the State to re-

---

**7.** While defense counsel objected on the grounds that the question went beyond the scope of "direct," it is clear defense counsel misspoke because at that stage of the proceeding, the only applicable objection would have been that the questioning was beyond the scope of "cross-examination." On appeal, the State concedes that Mr. Riley's proper objection was that the questioning was beyond the scope of "cross-examination." Therefore, in reviewing Mr. Riley's claim, this court will assume that Mr. Riley made the proper objection.

open its direct examination of Detective Bartlett after defense counsel completed its cross-examination. Point denied.

### No Error in Failing to Admit Evidence of Recent Drug Use by State's Witness

 In his third point on appeal, Mr. Riley asserts that the trial court abused its discretion in refusing to allow him to present evidence that Amanda tested positive for methamphetamine a week to ten days before his trial. Specifically, Mr. Riley contends that evidence of Amanda's drug use a week to ten days before his trial "demonstrated a continuing course of conduct involving [Amanda's] possession and use of methamphetamine" and, therefore, supported his defense that the drugs and paraphernalia seized from his home were actually possessed or controlled by Amanda.

On the morning of December 2, 2004, the day that Mr. Riley's trial began, the prosecutor informed the court and defense counsel that Amanda, who was then under the jurisdiction of the Saline County drug court, had tested positive for drugs within the last week to ten days. The prosecutor also requested that defense counsel not be allowed to ask any questions about Amanda's recent drug use. In response, defense counsel argued that such evidence was "very important" because it went "to the heart" of Mr. Riley's defense that Amanda was "the actual actor in all of these drug matters" of which Mr. Riley was charged. After a lengthy discussion of the matter, the trial court ultimately sustained the State's objection to introduction of the evidence regarding Amanda's drug test as being too remote in time to be relevant. The court, however, further ruled that it would allow defense counsel to ask Amanda about her guilty plea to a drug charge and any drug use that oc-

curred at the time Mr. Riley was arrested. The court also stated that it would allow defense counsel to make an offer of proof regarding Amanda's recent drug test.

After cross-examination of Amanda, defense counsel made an offer of proof. During the offer of proof, Amanda admitted that she used methamphetamine before February 8, 2004, the date Mr. Riley was arrested. Amanda also admitted that, as a result of being in drug court, she took a urine test in the previous thirty days and tested positive for methamphetamine. Following the offer of proof, defense counsel asked the court to allow re-cross examination of Ms. Riley on the issues put forth in the offer of proof. The trial court denied counsel's request finding that such evidence was not relevant and "not going to prove anything."

Determination of the relevancy and admissibility of evidence is a matter clearly within the discretion of the trial court and will not be reversed in the absence of an abuse of that discretion. *State v. Kidd*, 990 S.W.2d 175, 178 (Mo.App. W.D.1999). The trial court abuses its discretion when its "'ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *State v. Zink*, 181 S.W.3d 66, 73 (Mo. banc 2005) (citation omitted). In addition, a defendant must be prejudiced by the trial court's improper ruling on the admission of evidence to warrant a new trial. *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.*

 "'Evidence is admissible if it is logically and legally relevant.'" *State v. Hayes*, 88 S.W.3d 47, 60 (Mo.App. W.D. 2002) (citation omitted). "Evidence is logically relevant if it tends to prove or disprove a fact in issue." *Id.* Evidence is legally relevant if its probative value out-

weighs its prejudicial effect. *Id.* Balancing the probative value and the prejudicial effect of evidence " 'rests within the sound discretion of the trial court.' " *Id.* (citation omitted).

In this case, Mr. Riley argues that evidence of Amanda's drug use a mere week to ten days prior to his trial is relevant to his defense that the drugs and paraphernalia seized from his home on February 8, 2004, were actually possessed or controlled by Amanda. Specifically, Mr. Riley claims that such evidence was admissible because Amanda's drug use at the end of November 2004, demonstrates a continuing course of conduct that would tend to prove a fact in issue, that being, that Amanda was the source of the drugs and paraphernalia seized from his house on February 8, 2004.

While this court agrees with Mr. Riley that Amanda's positive drug test in November 2004 demonstrated that Amanda continued to use methamphetamine after Mr. Riley was arrested, such a fact was not at issue at Mr. Riley's trial. The only logically relevant issue at Mr. Riley's trial was who was in actual possession and control of the drugs and paraphernalia seized from Mr. Riley's home on *February 8, 2004*. Regarding this issue, Mr. Riley's defense was that the drugs and paraphernalia seized from his house were not his but, rather, were Amanda's. This court agrees that evidence that would tend to show that Amanda used drugs, such as a positive drug test, would tend to prove that Amanda was in possession of drugs and paraphernalia around the time she tested positive for drugs. Consequently, evidence of a positive drug test in November 2004 would tend to prove that Amanda was in possession of drugs in *November 2004*. Such evidence, however, would not tend to prove that Amanda was in possession of drugs on or around February 8,

2004, which is the relevant date in question. Accordingly, the trial court did not abuse its discretion in denying Mr. Riley an opportunity to present such evidence to the jury. Point denied.

## Error in Classification of Felony Convictions

In his fourth point on appeal, Mr. Riley asserts that the trial court plainly erred in convicting and sentencing him to class A felonies for manufacturing methamphetamine, under section 195.211, and possession of methamphetamine, under section 195.202, because those offenses, as charged and submitted to the jury, are class B and C felonies, respectively. The State agrees with Mr. Riley.

Here, the State charged Mr. Riley with manufacturing a controlled substance, methamphetamine, under section 195.211, and possession of a controlled substance, methamphetamine, under section 195.202. The State's information alleged that both charges were class A felonies. In addition, the written sentence and judgment entered by the trial court indicates that Mr. Riley was found guilty on both counts and classifies each count as a class A felony. Mr. Riley did not object to the classification of these two offenses as class A felonies. Thus, review of Mr. Riley's claim is for plain error under the standard set forth above.

Section 195.211.3 provides that "[a]ny person who violates ... this section with respect to any controlled substance except five grams or less of marijuana is guilty of a *class B felony*." (Emphasis added.) Similarly, section 195.202.2 provides that "[a]ny person who violates this section with respect to any controlled substance except thirty-five grams or less of marijuana is guilty of a *class C felony*." (Emphasis added.) Thus, the trial court's judgment improperly classified Mr. Riley's

convictions on these counts as class A felonies.

Under section 195.291.2, RSMo 2000, a person who has been found guilty of manufacturing a controlled substance under section 195.211, "when punishable as a class B felony, shall be sentenced to the authorized term of imprisonment for a class A felony which term shall be served without probation or parole if the court finds the defendant is a persistent drug offender." Likewise, under section 195.285.2, RSMo 2000, a person who has been found guilty of possession of a controlled substance under section 195.202.2, "shall be sentenced to the authorized term of imprisonment for a class A felony if it finds the defendant is a persistent drug offender." Therefore, because Mr. Riley was sentenced as a prior and persistent drug offender, the trial court did not err in sentencing Mr. Riley to an authorized term of imprisonment for a class A felony on both the manufacturing and possession convictions.

█ Nevertheless, a sentence enhancement "does not reclassify the underlying conviction." *State v. Ralston*, 39 S.W.3d 546, 551 (Mo.App. W.D.2001). Thus, in classifying Mr. Riley's convictions for manufacturing and possession as class A felonies, the trial court committed error that was "evident, obvious, and clear." *Bode*, 125 S.W.3d at 927. Because conviction of two class A felonies, when the felonies should have been classified as class B and C felonies, affects Mr. Riley's substantial rights, the trial court's error results in a manifest injustice to Mr. Riley entitling him to plain error relief. The trial court, however, did not err in sentencing Mr. Riley to terms of imprisonment as authorized for a class A felony based on Mr. Riley's status as a prior and persistent drug offender. Therefore, Mr. Riley is entitled to the relief he requested. Accordingly, the trial court's judgment is re-versed and remanded for correction of the judgment to reflect the proper classification of Mr. Riley's convictions for manufacturing a controlled substance as a class B felony, and possession of a control substance as a class C felony.

### No Error in Sentencing as Prior and Persistent Offender

█ In his fifth point on appeal, Mr. Riley claims that the trial court erred in sentencing him as a prior and persistent offender because the State failed to present sufficient evidence that the person identified in the prior convictions was the same person being prosecuted at trial. Specifically, Mr. Riley claims that because the Social Security Number listed in the information in this case, 4887–96–555, is not the same Social Security Number of the individual that committed the two prior convictions offered by the State, 487–96–5557, the State failed to prove prior offender status.

Here, the State offered certified copies of records from Saline County and Pettis County. The record from Saline County was a conviction against a Kevin E. Riley, with a date of birth of April 15, 1975, and a Social Security Number of 487–96–5557. The record from Pettis County was a conviction against a Kevin Eugene Riley, with a date of birth of April 15, 1975, and a Social Security Number of 487–96–5557. The information filed in this case was against a Kevin Eugene Riley, with a date of birth of April 15, 1975, and a Social Security Number of 4887–96–555. Thus, with the exception of the Social Security Number, all of the identifying information on each of the documents at issue in this case is the same.

█ "When defendant's first name and last name are the same as the first name and last name shown on the record of the previous conviction the state has made a

prima facie showing of identity." *State v. McBurnett,* 694 S.W.2d 769, 771 (Mo.App. E.D.1985). In addition, "[a] person's middle name has little, if any, legal significance." *Id.* Here, not only does the first and last name of the individual convicted in the Saline and Pettis County convictions match the first and last name of the individual convicted in the information in this case, but the date of birth is also the same on all three documents. Given that the Social Security Number listed on the information is not in the correct format of a proper Social Security Number, it is clear that a typographical error appeared on the information. Moreover, Mr. Riley does not claim that he is not the Kevin Riley who was convicted in both Saline and Pettis counties and named in the information filed in this case. Absent such a claim, because the first and last name on the prior convictions and the information in this case are the same, "the evidence is sufficient to establish identity." *State v. Simms,* 743 S.W.2d 465, 467 (Mo.App. E.D.1987). *See also McBurnett,* 694 S.W.2d at 771–72. Mr. Riley's claim of error is without merit. Point denied.

The trial court's judgment is reversed and remanded for entry of a proper judgment reflecting that Mr. Riley's conviction for manufacturing methamphetamine is a class B felony and his conviction for possession of methamphetamine is a class C felony. The trial court's judgment is affirmed in all other respects.

All concur.

